## HENRY FLORENTINE *v.* STATE OF MARYLAND

[No. 2, January Term, 1945.]

*Decided January 30, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and MARKELL, JJ.

*R. Palmer Ingram* and *Ellis Levin* for the appellant.

*William C. Walsh,* Attorney General, and *Hall Hammond,* Deputy Attorney General, with whom were *J. Edgar Harvey,* Assistant Attorney General, *J. Bernard Wells,* State's Attorney of Baltimore City, *Thomas N. Biddison* and *Anselm Sodaro,* Assistant State's Attorneys, on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

The Grand Jury of Baltimore City returned an indictment, containing two counts, against the traverser. The first count charged that three named men committed burglary and that traverser was accessory thereto. The second count charged a conspiracy between three named men and the traverser to break open and steal the contents of a certain safe, which was the property of one Gisner.

The trial of traverser, under this indictment, was held before Judge Tucker, presiding in the Criminal Court, without the aid of a jury. The Judge found a verdict of guilty on each count. Motion was made for a new trial before the Supreme Bench of Baltimore City, and was granted as to the first count and overruled as to the second count of the indictment. The prisoner was thereafter sentenced for guilt established by his conviction under the second count, and it is from this judgment and sentence the appeal in this case is taken.

The traverser had previously been tried before Judge O'Dunne, in the Criminal Court, on the charge of receiving stolen goods, and acquitted. There was evidence in the record tending to show the following facts:

Three men, namely, Wolloch, Forst and Rosen, about 2 o'clock in the morning of August 15, 1943, broke and entered the dwelling house of Irving Gisner, in Baltimore City, and took therefrom a small safe to the basement in the home of Rosen. They could not open the safe, and Rosen and Wolloch, about noon of the same day, found Florentine, the traverser, and took him (after he procured the tools) to the safe in Rosen's home for the purpose of opening the same. Florentine opened the safe. It required about fifteen minutes to do so. It was then discovered it contained government bonds, jewelry of great value, and $2,700 in cash, and from this money Florentine was paid $300 for his services in opening the safe. The three men named were indicted for the burglary and each pleaded guilty. Florentine was indicted for receiving the $300 knowing it to have been stolen. Judge O'Dunne found him to be not guilty under this indictment. Later the indictment in this case was returned by the Grand Jury. As we are now concerned with the trial under the second count, the ruling of the Court on the State's demurrer to the plea of former acquittal filed to the first count need not be noticed, except to say that the plea apparently embodied all of the testimony in the case tried before Judge O'Dunne. We thus have in this record the testimony in that case as well as the case at bar.

Seven of the nine exceptions reserved to the Court's ruling on evidence were abandoned in this Court. Two were pressed, the eighth and ninth exceptions. We will first examine the ruling constituting the ninth exception.

Rosen testified for the State against Florentine in the case tried before Judge O'Dunne and also in the instant case. Without detailing his testimony given in each case, it is sufficient to say that his evidence in the first case materially differed from his testimony in this case. Before Judge O'Dunne, Florentine was tried for receiving $300, a part of the contents of the safe taken from Gisner's house when it was burglarized by these three men. At the trial before Judge O'Dunne, Rosen testified that the

man who opened the safe was known to him only by sight, and he was called, or went by the name of "Dago," and that he has never seen him since. He said he did not see him in Court. At that trial his attention was directed to Florentine, by the Assistant State's Attorney, and he testified he had seen Florentine before and had known him for about a year. On cross-examination he was asked: "You say that Mr. Florentine had nothing to do with it?" To which the witness answered: "That is right."

At the trial of the instant case Rosen testified that Florentine opened the safe and that he paid him $300 for his services in opening it. Then occured this colloquy:

"(Mr. Ingram) If your Honor pleases, I would ask your Honor to hold this man for perjury, and ask your Honor as the Judge in this case to instruct Mr. Wolman to prepare a prosecution for perjury.

"(The Court) What for?

"(Mr. Ingram) If your Honor reads his testimony before, in the trial before Judge O'Dunne, if you read his testimony, and then have the stenographer read his testimony today, he has perjured himself before your Honor as to every material fact.

"(The Court) Well, I will take that up when the time comes. He is held anyhow in custody.

"(Mr. Ingram) That is true, but I ask your Honor right now to rule on it. (Mr. Ingram approached the bench and tendered a transcript of testimony to the Court.) I am certainly going to move that all of his testimony be stricken out.

"(The Court) If you move it be stricken out on the ground there has been a perjury—

"(Mr. Ingram) Absolutely.

"(The Court) Committed perjury in this trial?

"(Mr. Ingram) Yes, sir.

"(Mr. Wolman) Not in the other one?

"(Mr. Ingram) I wouldn't say which one. He has committed perjury in one.

"(The Court) It wouldn't make any difference. I want to see what he testified to before first.

"(Mr. Wolman) My brother objected strenuously to my asking this witness about his testimony in the previous case.

"(Mr. Ingram) How are you going to cure perjury by impeachment? You can't cure perjury by impeachment, and you know that.

"(The Court) Motion overruled, exception noted."

There can be no doubt that the testimony taken before Judge O'Dunne was offered to the Court. There was no objection to this offer, and the Court said: "I want to see what he testified to before first." Under these circumstances we think the evidence taken at the first trial became testimony in this trial.

Section 528 of Article 27 of Flack's Code, 1939, provides: "Any person who shall make oath or affirmation to two contradictory statements, each of them in one of the cases enumerated in Section 527 and in either case shall make oath or affirmation wilfully and falsely, shall be deemed guilty of perjury; and to sustain an indictment under this section it shall be sufficient to allege and prove that one of the said two contradictory statements is or must be false and wilful, without specifying which one."

The appellant contends that as Rosen made two different statements, under oath, regarding a material fact, in the manner hereinbefore referred to, he committed perjury and his testimony should have been stricken out by the Court. The testimony that it is contended constituted the commission of perjury was not objected to by appellant, and after it was given there was no motion interposed to strike it out. It would seem that it was deliberately given and not objected to, and, therefore, the objection comes too late. The question following the evidence denounced by appellant was objected to and sustained by the Court. And to the Court's ruling allowing the witness to answer the question next following, the appellant reserved his eighth exception. For this reason, the action of the Court in overruling the appellant's motion to strike out all of the testimony of Rosen was correct.

We might point out that Rosen, at the time, did not stand indicted for the commission of the perjury of which appellant complained, and, of course, had not, in due course of law, been convicted of such perjury. Certainly the Court in the instant case was not compelled to suspend the trial then proceeding before it, in order that a perjury prosecution might have been then and there instituted against the witness. Such practice might seriously interfere with prompt trials in criminal cases. Section 1 of Article 35, Flack's Code, 1939, provides in part: "but no person who has been convicted of the crime of perjury shall be admitted to testify in any case or proceeding whatever." Before one is disqualified as a witness under this provision, he must be convicted "of the crime of perjury." A witness cannot be convicted of perjury by judicial fiat. Whatever a judge may think regarding the want of truth of a witness testifying in his court, he cannot deprive him of his right under the law to testify, unless that right has been destroyed by a conviction of perjury in accordance with due process of law. A conviction presupposes an indictment; a trial on the indictment, either before a court or jury, the right of the accused to summon witnesses—to be represented by counsel, and to testify on his own behalf. To impose punishment justified by a trial in due course of law resulting in conviction, is one thing; to impose such punishment without such trial, is judicial tyranny.

The evidence given in the first trial, before the Court in the instant case, certainly impeached the witness' testimony in this case. The Court was sitting as a jury and, so sitting, it was for it to find the facts, with which this Court has nothing to do. We review matters of law, not of facts, in a criminal case. Appellant, in his brief, states the Court "attempted to decide in its own mind the question as to which testimony was false and which true, as evidenced by its verdict of guilty." And yet at the argument it was said the Court stated it did not consider the testimony given in the first trial offered in evidence in this case. There is not a word in the record to sub-

stantiate this statement of counsel, and we must presume that the Court considered all of the testimony before it, which, according to appellant's brief, it did. But appellant contends the Court was wrong in this; that he should not have considered any of the evidence of Rosen given at the first or second trial, because he "committed perjury."

In the case of *Porter v. Quarry Co.*, 161 Md. 34, page 37, 155 A. 428, 429, plaintiff testified he was walking on the shoulder on the right-hand side of a public road when he was overtaken by a truck, which was towing a second truck, and that the leading truck passed close by him and that something bumped him from the back and that after that he knew nothing for some time. Based on the same accident, he filed an application before the State Industrial Accident Commission and in that proceeding he stated that he attempted to climb on the leading truck as it was slowly passing, but fell to the ground and was run over by the rear truck. There was no denial by the plaintiff of his prior inconsistent testimony. He testified that he had no recollection of making the statement before the Commission because it was not until later that his mind had cleared up right from the effects of the accident. His attending physicians, and the attorney who represented him before the Commission, testified that his mental condition was normal at that period. The trial court withdrew the case from the consideration of the jury and directed a verdict for the defendant because the statement made by the plaintiff concerning the accident, before the Commission, contradicting and impeaching his evidence in the case, conclusively neutralized the probative effect of the plaintiff's testimony. On appeal, this was held to be error and the case was reversed and a new trial awarded. Judge Urner, in an opinion in that case, stated: "While the evidence produced by the defendant was unquestionably strong, and was doubtless convincing to the trial court, it was offered in refutation of testimony of the plaintiff, which, if believed by the jury, would admit of a verdict in his favor. The ques-

tion as to the legal sufficiency of the plaintiff's testimony, and of his right to have the case submitted to the jury, is not affected by the strength of the opposing proof, nor does the fact that the plaintiff made prior inconsistent statements disentitled him to have the jury decide as to the credibility of his testimony at the trial."

We think that case is controlling here and that it was for the Court, sitting as a jury in this case, to pass upon the credibility of Rosen's testimony. There was, therefore, no error in the Court's action in overruling the motion to strike out Rosen's testimony.

As to the correctness of the ruling involved in the eighth exception, we think it was competent for the State to show that Florentine was paid $300 for opening the safe.

Finding no error in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed, with costs to appellee.*