HASSAN RIFAT ERMAN and CHARLES EDWARD
BRENT
a/k/a ANTHONY PERRO v. STATE OF MARYLAND

[No. 1601, September Term, 1980.]

*Decided September 10, 1981.*

606

The cause was argued before MORTON, MOORE and COUCH, JJ.

*H. Russell Smouse* and *Howard L. Cardin* for appellant Erman. *Clarence W. Sharp, Assigned Public Defender,* for appellant Brent.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City, Harvey Greenberg* and *Gary Bernstein, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

Edward Stermer, president and majority stockholder of

the Mudge Paper Company (Mudge), was shot to death and robbed outside his office on the evening of December 16, 1976. Some two years later a grand jury separately indicted appellants Hassan Rifat Erman, the treasurer of Mudge, and Charles Edward Brent, charging them with murder, robbery, conspiracy and related counts. Following a joint jury trial in the Criminal Court of Baltimore, Erman was found guilty of murder in the first degree, use of a handgun in the commission of a crime of violence, and accessory before the fact to murder. Brent was found guilty of murder in the first degree, robbery with a dangerous and deadly weapon, and two counts of use of a handgun in the commission of a crime of violence. Erman received a life sentence for the murder conviction, plus a concurrent fifteen years for the use of a handgun conviction; his accessory conviction was merged into the murder conviction. Brent was sentenced to life imprisonment for his murder conviction, and a fifteen year concurrent sentence for his other convictions. Both Erman and Brent have appealed, raising some issues common to each other and some that are applicable to each individually. Those that are common to each appellant are:

1. Whether the trial court erred in granting the State's motion to join the indictments against the appellants for trial;
2. Whether the trial court erred in denying appellants' motions to sever;
3. Whether the trial court erred in refusing to require the production of prior statements and grand jury testimony of State's witness Paul Katsus;
4. Whether the trial court erred in admitting evidence of Erman's financial condition;
5. Whether the trial court erred in admitting the testimony of Paul Katsus;
    (a) because he was a perjurer,
    (b) because the conspiracy counts had been dismissed,

(c) because of his violation of the sequestration order.

6. Sufficiency of the evidence.

Issues raised by Erman only are:

1. Whether Erman was denied his right to be present at every stage of the trial;

2. Whether the trial court erred in refusing to dismiss the indictments because of abuse of the Grand Jury process.

Issues applicable to Brent only are:

1. Whether the trial court erred in denying his motion to suppress the statement of October 26, 1978;

2. Whether the trial court erred in admitting certain alleged rebuttal testimony;

3. Violation of the "other crimes" evidence rule;

4. Whether the trial court erred in failing to submit the question of the voluntariness of the October 26, 1978 statement as well as other statements;

5. Whether there was error in denying his motion for mistrial following allegedly improper jury argument;

6. Whether he was entitled to a private trial and a sequestered jury.

## The Facts

Because of the nature of the issues raised a brief outline of the facts involved here will suffice, with additional facts supplied as necessary in our discussion of the issues.

Shortly after Edward Stermer stepped outside the company's building on December 16, 1976, en route to the company's annual Christmas party, he was confronted by a male who proceeded to shoot him five times, causing his death. Appellant Erman had accompanied Stermer from the

building but apparently had gone to his car and was not near Stermer during the shooting. After some two years' investigation, the focus thereof centered on Erman, appellant Brent, and one Paul Katsus; Katsus ultimately was immunized from prosecution by the State and testified for the prosecution. His testimony, Brent's testimony, and other evidence offered by the State tended to show that Erman, who was living beyond his means and who could profit from Stermer's death, engaged Brent, a longtime school friend of one of his sons, to kill Stermer; Brent is supposed to have enlisted the help of Katsus. Brent, however, said that he and Erman cancelled their plans for the killing and that he so advised Katsus. Katsus, on the other hand, denied being so told and said that he was nearby when Brent shot Stermer. The jury, following a protracted trial,[1] found Erman and Brent guilty.

*Issues common to both appellants*

(1) and (2)

*State's Motion to Join Separate Indictments For Trial and Appellants' Motion to Sever*

(1)

The State, having separately indicted the appellants and desiring to try them jointly, moved to join the indictments. This motion was opposed by the appellants, but was granted by Judge David Ross, Criminal Court of Baltimore. Brent focused his opposition to joinder on what he perceived as the more voluminous and protracted evidence to be presented against Erman. The basis for Erman's objection was that there would be evidence presented against Brent which would not be admissible against him in a separate trial, and the likelihood of a *Bruton*[2] problem. This problem did not arise because Brent chose to testify. The thrust of the State's

---

**1.** Nearly six weeks.

**2.** Bruton v. United States, 391 U. S. 123 (1968).

argument for joinder, simply stated, was that the appellants and the offenses could have been joined in a single charging document (see Md. Rule 745 a) and the evidence as to one would have been admissible against both. The record discloses that at the hearing on the motions to join indictments before Judge Ross the State advised the Court it intended to offer a statement given by appellant Brent which would be redacted so as to eliminate all "even closely incriminating statements made of the co-defendant [Erman]." No mention was made of the use of other witnesses who might give evidence admissible against Brent but not Erman; the argument of counsel for all parties focused on Brent's statement. Judge Ross filed a written memorandum wherein, on this issue, he stated:

"Joinder of defendants for trial is favored for reasons of economy, of time and other resources of the court and witnesses, *Lewis v. State,* 235 Md. 588 (1963); *Johnson v. State,* 38 Md. App. 307 [sic] (1977); *Peterson v. State,* 15 Md. App. 478 (1972). Any risk of prejudice to the defendant Erman with respect to Brent's statement can be avoided by deleting any reference to him. *ABA Standards Relating to Joinder and Severance,* § 2.3, Approved Draft, 1968. It is not at all clear that separate trials would result in a substantial saving of trial time for Brent. In any event, that reason standing alone is not sufficient to warrant separate trials. *ABA Standards Relating to Joinder and Severance,* § 2.3 (b) Commentary, Approved Draft, 1968. The public interest in economic use of judicial resources is paramount absent some other risk of prejudice. None of the other grounds for separate trials alleged by the defendants were substantiated at the hearing.

The State's motion to join all charges for trial is granted and defendants' motions to sever are denied on the condition that either (1) Brent's statement not be introduced into evidence or (2) a version of the statement from which all mention of Erman has

been excised in a manner which conceals the fact of excision be introduced. The State's motion for appropriate relief is moot."

In *Stevenson v. State,* 43 Md. App. 120, 403 A.2d 812 (1979), *aff'd other grounds,* 287 Md. 504 (1980), we pointed out that whether to allow a severance of defendants for trial lies in the sound discretion of the trial judge. Under the posture of the case when Judge Ross made his ruling we cannot say he abused his discretion, particularly since he took pains to try to alleviate any prejudice.

(2)

With respect to the second prong of the arguments of both appellants, that is the failure of the trial judge (Levin, J.) to have separated their trials when requested to do so many times during the trial itself (apparently some 25 to 35 times), we have more difficulty. First, we note that Brent argues in his brief that he had moved for a severance and mistrial during the course of the trial itself. The State contends that he did no such thing, neither did he join in Erman's motions. Brent has not provided us with any reference to the record where it would be reflected that he did so, and our review does not so indicate. As to Brent, therefore, we conclude he has waived any right to raise this issue. Md. Rule 1085.

As to Erman, it is abundantly clear that he frequently moved for a mistrial and severance during the course of the trial, all of which were denied, but in several instances (not all), the trial judge did instruct the jury that what they had heard was to be considered as to Brent only and not Erman. Some of the instances involved testimony of alleged criminality or misconduct on the part of Brent which in no way involved Erman; for example, Brent's threats on people's lives, his plan to kill one Stearck, shooting a neighbor's dog, and shooting at the house of an acquaintance of his with whom he had had some trouble and for which he was charged with assault with intent to murder (subsequently dropped by the State). This evidence clearly would not have been admissible in a separate trial of Erman alone. Further, in our view

the character of the evidence was such as to be prejudicial to Erman. As a matter of fact, the trial judge recognized that Erman was being prejudiced, but not "improperly." In any event, the trial judge commented that "to be consistent, Mr. Smouse [Erman's counsel], I'm going to rule against you because if I have permitted this trial to be jointly tried so far, if you do have the right to cross-examine, I take the view that traditionally covers you." We believe the trial judge abused his discretion.

Before discussing the merits of this issue we think it appropriate to consider the general question of severance. Md. Rule 712 governs the joinder of offenses and defendants in the same charging document. It is specifically provided in section b. of the rule that:

> "Two or more defendants, whether principals or accessories, may be charged in the same charging document if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. The defendants may be charged in one or more counts together or separately and it is not necessary to charge all the defendants in each count."

In order to avoid prejudice by the joinder for trial of counts, charging documents or defendants, Md. Rule 745 c provides that:

> ". . . the court may, upon its own motion or the motion of any party, order separate trials of counts, charging documents or defendants, or grant any other relief justice requires."

Under the terms of Md. Rule 736 a motion to sever defendants or offenses for trial is made a mandatory motion, required to be filed within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 except when discovery is furnished on an issue which is the subject of the motion, then the motion may be filed within five days after

the discovery is furnished. Rule 736 a also provides that a motion for joint or separate trial of defendants or offenses not raised in accordance with the rule is waived, unless the court, for good cause shown, orders otherwise. Thus it would appear that a motion for severance of defendants, made during trial, may, for good cause shown, be considered by the court, although this may be arguable. In any event, it is not the label put on the motion, whether one for severance or mistrial, that counts. As Judge Lowe stated for the Court in *Wise v. State,* 47 Md. App. 656, 671, 425 A.2d 652 (1981), when discussing an alleged distinction between a motion for severance and one for a mistrial in a double jeopardy context:

> "The fragrance is not affected by what we call the flower. The distinction does not turn upon the label applied by the trial judge. The critical question is whether the order contemplates an end of all prosecution of the defendant for the offense charged. *Lee v. United States,* 432 U.S. 23, 30 (1977)."

In our view what is important is what standard must the trial judge use when confronted, in trial, with such a motion. We conclude that, as Rule 745 contemplates, there must be prejudice to a defendant when joined for trial with another defendant and that this prejudice must be such as to prevent him from receiving a fair trial before he is entitled to a severance or a mistrial. The late Judge O'Donnell, in speaking for the Court of Appeals in *Wilhelm v. State,* 272 Md. 404, 429, 326 A.2d 707 (1974), in pertinent part stated:

> "A request for a mistrial in a criminal case is addressed to the sound discretion of the trial court and the exercise of its discretion, in a case involving a question of prejudice which might infringe upon the right of the defendant to a fair trial, is reviewable on appeal to determine whether or not there has been an abuse of that discretion by the trial court in denying the mistrial. *Basiliko v. State,* 212 Md. 248, 260-61, 129 A.2d 375, 381

(1957). The decision by the trial court in the exercise of its discretion denying a mistrial will not be reversed on appeal unless it is clear that there has been prejudice to the defendant. . . .

\* \* \* \*

The trial court, in the exercise of its discretion, should declare a mistrial only where there is 'manifest necessity for the act,' *Cornish v. State,* 272 Md. 312, 322 A.2d 880; it should never be granted for light and transitory reasons which do not result in any real prejudice to the accused. (Citation omitted)."

It is basic that an accused is entitled to a fair trial although not to a perfect one. *Burkett v. State,* 21 Md. App. 438, 443, 319 A.2d 845 (1974). We also recognize that the giving of a curative instruction often will overcome any prejudice to a co-defendant. When, however, as here, the instances of the need to so instruct the jury are many, the effectiveness of such instructions may very well diminish to the point of becoming meaningless. In *Shingleton v. State,* 39 Md. App. 527, 387 A.2d 1134 (1978), we recognized that inadmissible evidence could have a spill-over effect on a co-defendant which could make it difficult for a jury "to separate the wheat from the chaff." Chief Judge Gilbert, writing for the Court in *Shingleton,* went on to state:

"The judge's declination to sever the cases, he asserts, denied him a fair and impartial trial. We agree with Bechtel, and we add that at oral argument, the State submitted that 'there are no Maryland cases which would justify joinder in this case.' The State did, however, urge us to adopt the view of federal courts and hold the joinder to be permissible. In order to follow that course, we would have to overrule our holding in *Wilson v. State,* 8 Md. App. 653, 262 A.2d 91 (1970), and ignore the decisions of the Court of Appeals in *McKnight v. State,* 280 Md. 604, 375 A.2d 551 (1977); *rev'g* 33

Md. App. 280, 364 A.2d 116 (1976); *McChan v. State,* 238 Md. 149, 207 A.2d 632 (1965); and *Lewis v. State,* 235 Md. 588, 202 A.2d 370 (1964). We possess neither the inclination to overrule *Wilson* nor the power to ignore, thus implicitly overruling *McKnight, McChan,* and *Lewis.*" *Id.* at 544.

See also *Day v. State,* 196 Md. 384, 76 A.2d 729 (1950) and *Ellerba v. State,* 41 Md. App. 712, 398 A.2d 1250 (1979), *cert. den.* 285 Md. 729.

In the instant case, the type of evidence as to Brent only which caused the trial judge to instruct the jury repeatedly, seems to us to have been increasingly prejudicial to Erman, particularly as the number of incidents grew. In short, we view the cumulative effect of such evidence as denying Erman a fair trial. The argument for a joint trial — judicial economy — has merit. Nevertheless, this must always be balanced against the prejudice to a defendant, *State v. Jones,* 284 Md. 232, 238, 395 A.2d 1182 (1979).

In addition to the claim of prejudice, Erman contends that his defense was antagonistic to that of Brent and this alone was justification for severance. See *Day v. State, supra,* where the hostile positions of co-defendants were recognized as a valid reason requiring severance of their trials. Inasmuch as Erman did not testify at trial, we are not altogether certain that this argument has validity. Nevertheless, hostile positions appear to have existed, and this, coupled with what seems to us to be clearly prejudicial evidence being placed before the jury, prevented Erman from securing a fair trial. In short, it is our view that there was manifest necessity for separating the trials of the defendants as the incidences of prejudice to Erman grew.

Accordingly, as to Brent we perceive no error here, but as to Erman we must vacate his conviction and remand for a new trial as to him only.

(3)

*Grand Jury Testimony of Katsus*

Prior to trial both appellants moved to compel the disclo-

sure of the grand jury testimony of State's witness Paul Katsus, who had made two appearances before them. The record discloses that the State admitted Katsus gave testimony in his second appearance inconsistent with that given in his first appearance. It was also proffered by the State that Katsus would testify consistently with his testimony given at his second appearance. The State then offered to produce the first appearance testimony, but declined with respect to the second. Judge Ross denied appellants' motions. A second pre-trial motion for the same material was denied. A third motion was made before trial by Erman alone, in which a request was made for any statements Katsus may have made to the police or anyone. This, too, was denied. At the beginning of the trial Erman again renewed his motion for grand jury testimony disclosure, and again it was denied. Further, after Katsus had testified on direct examination, both appellants again renewed their previous motions for the grand jury testimony and again the judge denied the motions. Our reading of the record indicates that it was the grand jury testimony appellants really wanted and at no time did either appellant seek any written statements. While Judge Levin did not have the testimony of Katsus's second appearance before the grand jury at the time of trial when he made his ruling, he did have such testimony at the hearing of the motion for a new trial. At that time, he advised the parties that he had read the testimony and other than in two minor areas, he found no inconsistency between that testimony and Katsus's trial testimony. We, too, have examined this grand jury testimony and find that it is substantially in accord with Katsus's trial testimony.

Appellants argue that on the authority of *Carr v. State,* 284 Md. 455, 397 A.2d 606 (1979), and *Leonard v. State,* 46 Md. App. 631, 421 A.2d 85 (1980), *aff'd* 290 Md. 295, 429 A.2d 538 (1981), they were entitled to the grand jury testimony. Neither *Carr* nor *Leonard* concerned the disclosure, at trial, of a witness's prior grand jury testimony. In *Silbert v. State,* 12 Md. App. 516, 280 A.2d 55 (1971), however, this Court did indicate that upon the showing of a "particularized need," there would be justification for a discreet

and limited lifting of the grand jury secrecy rule to allow the use of the grand jury transcript at trial to impeach a witness, to refresh his recollection, or to test his credibility. More recently, however, the Court of Appeals observed:

"Attorney disciplinary proceedings before an Inquiry Panel upon a complaint that an attorney has committed an act of misconduct are similar in purpose to the accusatory proceedings conducted by a grand jury. (Citation omitted). It is true, of course, that in a proper case an accused may, at trial, be afforded access to grand jury minutes for purposes of cross-examination or impeachment if he demonstrates a 'particularized need' for disclosure." (Citations omitted). *Attorney Griev. Comm'n. v. Strathen,* 287 Md. 111 at 117 (1980).

We need not decide, under the facts and circumstances of this case, whether there was a "particularized need" shown, or indeed what would constitute such a need; nor need we decide whether, "particularized need" being shown, the trial judge here erred in denying the request for Katsus's testimony on his second appearance before the grand jury. This is so because even assuming error was committed, in our view such error was harmless. The State's proffer of consistency was confirmed by the trial judge and our own independent examination of the involved statement persuades us that any discrepancy was minor indeed. Furthermore, not to be overlooked was the fact that the jury was well aware that Katsus's first grand jury testimony was truly inconsistent with that given by Katsus at trial. Accordingly, we find no reversible error in the trial judge's ruling on this issue.

(4)

*Admission of Evidence of Erman's Financial Condition*

(a)

*Erman's contention*

Although, as seen above, we have vacated Erman's con-

victions, we have also remanded for a new trial as to him. In the event of a new trial it is probable this issue will again rise; thus, for the benefit of the trial court, we shall address the issue. The State's theory of its case against Erman was that he had a financial need, saw a way to gain financially if the president, Stermer, and the vice-president, Shields, of the Mudge Paper Company, were to die. This was so because Erman had stock in the company, which would have enhanced value upon the deaths of either the president or vice-president due to a company stock buy back agreement financed by key-man insurance. Thus, the State reasoned, Erman had a motive to see to the death of either. To show the alleged financial need-gain theory, it was necessary to show Erman's financial condition. This was accomplished basically by showing what he had, what he earned, what he spent, and what he owed. The end result was that the jury had before it evidence that Erman was living well beyond his means, although Erman's evidence tended to show otherwise. Erman argues that in trials for non-speculative crimes evidence of financial condition is inadmissible, gleaning support from *Williams v. State,* 15 Md. App. 320, 290 A.2d 542 (1972). While it is true that we said in *Williams,* at 330,

> "The prosecution is not ordinarily permitted to refer
> to financial matters where they are collateral to an
> issue in the case,"

we also pointed out that there were several exceptions to the rule. We also made clear that the issue was one left to the sound discretion of the trial judge. In our view the evidence of financial need-gain was relevant to the issue of motive, and we find no error in its admission.

### (b)

### *Brent's contention*

Brent complains that he suffered prejudice through the use of evidence against Erman of his financial condition. As explained above in our discussion of issues (1) and (2), we

believe Brent has waived his right of review because he has referred us to no record reference where he moved for a severance or mistrial during trial. In any event, we find no abuse of discretion by the trial court here.

## (5)

### Trial testimony of Katsus

On appeal both Erman and Brent contend that the trial court erred in admitting into evidence the testimony of an accomplice, Paul Katsus. The appellants support their contention by arguing that:

(a) Katsus's possible commission of perjury before the grand jury rendered him incompetent as a trial witness;

(b) The dismissal of conspiracy charges against the appellants barred the use of the co-conspirator exception to the hearsay rule as justification for admitting Katsus's testimony; and

(c) Katsus's violation of the sequestration order warranted the striking of his testimony.

### (a)

### Perjury Issue

During a pre-trial hearing on the appellants' motion to compel disclosure of Katsus's grand jury testimony, the State conceded that Katsus had twice testified before the grand jury, and that his second grand jury testimony materially contradicted his previous testimony. The trial court was informed that Katsus's trial testimony would be consistent with his testimony at his second grand jury appearance.

The State called Katsus as a trial witness. After he was sworn, but before he testified, both appellants objected to his testimony on the grounds that he was not a competent witness. The appellants jointly moved that Katsus not be

permitted to testify because he was "an admitted perjurer" even though the State had not ". . . prosecuted him for it." The court denied this motion.

Katsus had received immunity from prosecution for any perjury which he may have committed before the grand jury. Appellant Brent contends that this grant of immunity from prosecution "only magnifies the possibilities for further perjury and should not be condoned as a vehicle for exploitation of the untruthful testimony."

The law concerning the competency of a perjurious witness is set forth in Md. Cts. & Jud. Proc. Code Ann. § 9-104, which provides that a person convicted of perjury may not testify. Appellant Brent submits that Katsus's "admission of perjury" should have the "same effect" as a perjury conviction. Similarly, appellant Erman suggests that we "extend the application" of § 9-104 to include persons "who indeed are guilty of perjury whether or not the State seeks to formally charge and convict them."

In effect, what is here being suggested is that we judicially extend a legislative pronouncement, i.e., extend § 9-104 beyond its clear language. This we may not do. As Judge Powers stated in *Dept. of Natural Resources v. Adams,* 37 Md. App. 165, 173, 377 A.2d 500 (1977):

> "A court may not add to a statute by judicial construction, nor lightly read into a statute by implication, a provision which the legislature did not see fit to include. *Department v. Greyhound,* 247 Md. 662, 234 A.2d 255 (1967); *Amalgamated Ins. v. Helms,* 239 Md. 529, 212 A.2d 311 (1965). Where a law is plain and unambiguous, free from all objection on constitutional grounds and enacted in an area clearly within the province of the legislature, courts have no power to set aside or evade its operation by forced or unreasonable construction."

Thus before one is disqualified as a witness under the provision of § 9-104, he must be convicted of the crime of perjury.

Maryland case law firmly supports this holding. In

*Florentine v. State,* 184 Md. 335, 40 A.2d 820 (1945), the Court of Appeals rejected the contention that a witness was rendered incompetent to testify because of inconsistencies between his testimony at separate trials. Speaking for the Court, Judge Grason stated:

> "A witness cannot be convicted of perjury by judicial fiat. Whatever a judge may think regarding the want of truth of a witness testifying in his court, he cannot deprive him of his right under the law to testify, unless that right has been destroyed by a conviction of perjury in accordance with due process of law. A conviction presupposes an indictment; a trial on the indictment, either before a court or jury, the right of the accused to summons witnesses — to be represented by counsel, and to testify on his own behalf. To impose punishment justified by a trial in due process of law resulting in a conviction, is one thing; to impose such punishment without such trial, is judicial tyranny." *Id.* at 340.

Relying on *Florentine, supra,* the Courts have consistently restricted the application of the competency of witnesses statute, and held that testimony of a witness may be impaired but not rendered nugatory by proof of previous inconsistent statements. *See Crunkilton v. Hook,* 185 Md. 1, 5, 42 A.2d 517 (1945); *Pullman Co. v. Ray,* 201 Md. 268, 273, 94 A.2d 266 (1953); *Vandergrift v. State,* 17 Md. App. 1, 4-6, 299 A.2d 451 (1973).

In light of these Maryland authorities, the trial court properly ruled that Katsus was a competent witness.

### (b)

### Co-conspirator's Testimony

Prior to the trial, the appellants moved to dismiss the conspiracy indictments against them. The trial court conducted a hearing, accepted memoranda, and dismissed the conspiracy indictments because they were filed beyond the time permitted under the applicable statute of limitations.

During the trial, when Paul Katsus began describing his trip to West Virginia with appellant Brent, counsel for appellant Erman objected to this testimony as constituting inadmissible hearsay. The trial court overruled the objection on the grounds that the testimony was admissible as testimony of a co-conspirator. Other similar objections during Katsus's testimony were likewise overruled.

After Katsus's direct examination, Erman's counsel moved to strike the statements of Katsus. This motion was overruled, as was the renewal of the motion made by Erman's counsel at the conclusion of the State's case.

On appeal both appellants contend that the trial court erred in admitting into evidence the statements of Katsus, as testimony of a co-conspirator, after the conspiracy charges were dismissed. The State indicates that appellant Brent has not properly preserved this issue for review because he did not object to or move to strike Katsus's testimony at trial. The State also contends that Erman's argument on collateral estoppel [3] is made here for the first time and thus not preserved for our review. We have reviewed the record and find that the State's position is correct. Appellant Brent did not object to or move to strike Katsus's testimony. As to Erman, the thrust of his objection in the trial court was that Katsus had not been shown to be a co-conspirator, not what is now argued for the first time. We decline to review the issue. Md. Rule 1085.

### (c)

### *Sequestration Order*

Before the State's first witness testified, Brent's counsel moved to sequester the witnesses, pursuant to Md. Rule 755 (a). The court granted this motion. Several days later, during the cross-examination of Paul Katsus, it was learned that Katsus had followed the progress of the trial by reading certain newspaper articles. Counsel for both appellants moved for the exclusion of Katsus's testimony, contending

---

3. Ashe v. Swenson, 397 U.S. 436 (1970); Powers v. State, 285 Md. 269, *cert. denied,* 444 U.S. 937 (1979).

that Katsus acted contrary to the sequestration order. After hearing argument, the trial court denied it. The trial court, in ruling on the motion, stated that the purpose for the sequestration rule was to prevent a prospective witness from hearing the testimony of other witnesses and then conforming or harmonizing his testimony thereto. The Court of Appeals supported this interpretation of Md. Rule 755 (a) in *Johnson v. State,* 283 Md. 196, 200, 388 A.2d 926 (1978).

The trial court determined that the issue raised by the appellants was "technically not in the area of sequestration" because no evidence was presented of any discussion between Katsus and the other witnesses. The court then ruled that no impermissible harmonization of testimony could be inferred from Katsus's reading of the newspaper, in the absence of any evidence that this testimony was based on what he read.

On appeal Brent contends that the trial court erred in not conducting a "thorough investigation" of Katsus's activities, and that this error deprived Brent of his right to a fair trial. Similarly, Erman argues that the court's denial of the motion to strike Katsus's testimony resulted in both "extreme prejudice" and "irreparable prejudice."

We disagree with these contentions. Having reviewed the record and case law we find that the alleged violation of the sequestration order was adequately examined by the trial court. The appellants did not request an *in camera* proceeding concerning Katsus's readings. In fact, the appellants never requested the court to admonish all witnesses to avoid reading accounts of the trial, neither did their counsel inquire of Katsus during his cross examination concerning the effect his reading may have had on his testimony. In the absence of such requests, admonishment, or evidence of prejudice, we cannot say that the trial court abused its discretion in denying the motion to exclude Katsus's testimony. *Brown v. State,* 272 Md. 450, 325 A.2d 557 (1974); *Marshall v. State,* 46 Md. App. 695, 420 A.2d 1266 (1980); Md. Rule 755 (d).

(6)

*Sufficiency of the Evidence—Erman*

This issue must be addressed because if the evidence was insufficient to support Erman's conviction he may not be retried. *Burks v. United States,* 437 U. S. 1 (1978). In essence, Erman argues that the case against him rests on the testimony of Paul Katsus, an admitted accomplice, whose testimony lacked corroboration and who was an admitted perjurer. We need not dwell long on this argument. Since we believe there was no error in admitting the testimony of Katsus, we need only concern ourselves with whether his testimony was corroborated. What was said in *Brown v. State,* 281 Md. 241, 378 A.2d 1104 (1977), by the Court of Appeals guides us in determining this issue. There, it was stated, at 244:

"Not much in the way of evidence corroborative of the accomplice's testimony has been required by our cases . . . while the corroborative evidence need not be sufficient in itself to convict, it must relate to material facts tending either (1) to identify the accused with the perpetrators of the crime or (2) to show the participation of the accused in the crime itself . . . if with some degree of cogency the corroborative evidence tends to establish either of these matters the trier of fact may credit the accomplice's testimony even with respect to matters as to which no corroboration was adduced . . . and indeed may even be circumstantial. . . ." (Citations omitted).

After carefully examining the record we are satisfied there was corroboration of Katsus's testimony. Certainly there was independent evidence of "linkage" between Erman and Brent: of Erman's position in Mudge where he would have been privy to the stock buy-back agreement and to the travel schedule of Shields in West Virginia; that Brent looked up to Erman and would do anything for him; of Erman's presence with Stermer at the scene of the murder

just before it occurred. In our view Katsus's testimony, as corroborated, was sufficient to permit the trier of fact to find Erman guilty as a principal in the second degree.

### Sufficiency of the Evidence—Brent

Brent also argues that his convictions may not stand because the testimony of Paul Katsus was not sufficiently corroborated and was "internally" contradictory. He concedes that "the evidence, be it direct or circumstantial, may be considered collectively, and it is not necessary that each circumstance, standing alone, be sufficient to establish guilt." *Metz v. State,* 9 Md. App. 15, 262 A.2d 331 (1970).

We have no difficulty in concluding, after reviewing the record, that Katsus's testimony was corroborated by the demonstration of material facts which identified Brent either with the perpetrator of the crime (Katsus) or as the perpetrator himself. What Brent really appears to be arguing is that because Katsus's testimony had some inconsistencies the jury should not have believed it. We point out that Brent's own testimony, in large respect, corroborates Katsus's testimony. See *McDowell v. State,* 231 Md. 205, 189 A.2d 611 (1963). We also point out that the jury was not compelled to believe Brent's testimony regarding the events on the day of the crime.

Without reciting all of the testimony concerning this issue, suffice it to say that having read the record we are satisfied there was sufficient corroboration of Katsus's testimony to support Brent's conviction.

### Issues Raised By Erman Only

In light of our conclusion on the severance issue above, normally it would not be necessary to discuss other issues raised by Erman. There is however, one issue that must be addressed, and one which will be addressed for the benefit of the trial court on retrial.

### (1)

*Erman's Attendance at Bench Conferences*

Because of our vacation of Erman's conviction, and remand, we need not address this issue. For the trial court's benefit, however, we refer it to *Hughes v. State,* 288 Md. 216, 421 A.2d 69 (1980), for guidance.

### (2)

*Abuse of Grand Jury Process*

Appellant Erman contends that the trial court erred in refusing to dismiss the indictment against him because he claimed the State used the grand jury process, after his indictment, to procure evidence against him pertaining to motive. The record shows that in answer to this motion the State denied it had misused the process of the grand jury, alleging that the subpoenas for the production of certain records and documents were issued for the "dominant purpose of investigating and obtaining evidence concerning the Defendant's implication in other crimes, specifically, larceny after trust, embezzlement and income tax fraud." The State also stated that during the initial preparation and investigation of the involved indictments for trial it had, without the use of grand jury subpoena, discovered evidence which it felt reasonably indicated that Erman was implicated in other uncharged criminal acts; examples of this other evidence was given. When the motion was argued before Judge Levin no further evidence was given to him by either Erman or the State; the motion was denied because Judge Levin stated:

"Inasmuch as I do not find that the State's Attorney has used the process of the Grand Jury for any dominant purpose, vis-á-vis the instant charges. . . ."

We cannot say the trial judge was clearly erroneous. Md. Rule 1086. Significantly, the trial judge did order the State to notify Erman of all grand jury subpoenas it had caused to

be issued after his indictment. Whether this was done we cannot tell from the record, nor does it appear that the issue was ever raised thereafter.

While use of the grand jury process to gather evidence as to those charges for which a defendant has been indicted cannot be condoned, the defendant has the burden of overcoming the presumption of regularity attending grand jury proceedings. In our view this presumption is not overcome by a bald conclusory allegation.

In *United States v. Woods,* 544 F.2d 242, 250 (6th Cir. 1976), the Court stated:

> "... accordingly, in *United States v. George* (citation omitted), we held that '[s]o long as it is not the sole or dominant purpose of the grand jury to discover facts relating to [a defendant's] pending indictment, the Court may not interfere with the grand jury's investigation."

In reaching this conclusion the Court further observed that the defendants made no showing that certain witnesses called before the grand jury had not been so called for purposes other than a purpose related to the pending indictment.

The question appears to be one of first impression in Maryland as we have been unable to discover any case where either the Court of Appeals or this Court has addressed the issue, nor have we been referred to any. Nevertheless, there is authority in other jurisdictions for the general proposition. *See United States v. Woods,* supra; *Beverly v. United States,* 468 F.2d 732, 743 (5th Cir. 1972); *In re Inzirillo,* 542 F.2d 90, 91 (1st Cir. 1976); *People v. Donaudy,* 386 N.Y.S.2d 326, 330 (N.Y. 1976); *United States v. Doe,* 455 F.2d 1270, 1274-1275 (1st Cir. 1972). In these cases, however, it was made clear that there is a presumption of regularity that attaches to grand jury proceedings and the defendant has the burden of demonstrating that an irregularity has occurred. *See also Brack v. Wells,* 184 Md. 86, 91-92, 40 A.2d 319 (1944), in which the Court of Appeals affirmed the broad inquisitional powers of Maryland's grand juries.

Appellant Erman concedes that "a good faith inquiry into other charges within the Grand Jury's lawful authority is not prohibited even if it uncovers further evidence against an indicted person." See *In re Grand Jury Proceedings,* 632 F.2d 1033 (3d Cir. 1980).

In the instant case, we find no evidence to support Erman's bald allegation that the grand jury proceedings were a sham income tax investigation and that the real purpose was for the discovery of evidence to be used at trial; he failed to sustain his burden, and the trial court was correct in denying his motion.

Finally we observe that, in any event, dismissal of the indictment would seem to us an inappropriate remedy under the circumstances. Other sanctions such as suppression of evidence put before the grand jury could be applied.

## Brent's Separate Issues

### (1) and (4)

### The Motion to Suppress Brent's Statement of October 26, 1978

### and

### Failure to Submit Issue of Voluntariness of the Statement to the Jury

Since both of these questions concern Brent's statement of October 26, 1978, we shall address them together.

### (a)

### The Motion to Suppress

The record is clear that on October 26, 1978 Brent voluntarily appeared at the Baltimore City Homicide Office after he had previously made arrangements to meet with certain homicide detectives to whom he had earlier talked about his knowledge of the Stermer murder. At this time he

was not under arrest, nor had he been indicted. It is also clear that he was free to leave at any time and, after giving answers to questions asked of him, he was taken home by one of the detectives.

Prior to trial Brent filed a motion to suppress this statement because he had not been given his "*Miranda*" [4] warnings. Judge David Ross denied this motion after hearing; Brent now claims error on the ground that the statement was the product of a custodial interrogation which, to be admissible in evidence, requires the giving of the *Miranda* warnings. We see no merit to this contention for both technical and substantive reasons. First, the issue has been waived in that, at trial, Brent specifically advised the trial judge that there was no objection to the admission of the statement. Furthermore, we believe the motions judge was correct in denying the motion. This is so since we believe the record demonstrates that the statement was not the product of a custodial interrogation. In *Cummings v. State*, 27 Md. App. 361, 367, 341 A.2d 294 (1975), we said:

"In addressing a *Miranda* problem, a court has before it four potential issues: the questions of 1) custody, 2) interrogation, 3) warnings and 4) waiver. The first two questions deal with the applicability of *Miranda*; the second two deal with compliance with *Miranda*. A court must ask:

1. Was there CUSTODY?
2. Was the statement under scrutiny made in response to INTERROGATION?

The answer to both of the foregoing questions must be in the affirmative before *Miranda* is even applicable. Only in the event that Custody and Interrogation are found to have been present does a court move on to consider the two questions determining whether there has been compliance with *Miranda:*

3. Were there adequate WARNINGS?
4. Was there an adequate WAIVER?"

---

4. Miranda v. Arizona, 384 U.S. 436 (1966).

While interrogation took place, as noted above, the interrogation was not custodial and thus *Miranda* simply is not applicable.

## (b)

### Failure to Instruct on Voluntariness

When the trial judge instructed the jury he did not, nor was he requested to, submit the issue of the voluntariness of the October 26, 1978 statement to it; neither did Brent take any exception to this omission. Brent now contends that the issue of voluntariness was generated by the evidence and the trial court erred in not submitting the issue to the jury. We disagree. In the first place, we have serious doubts that the issue of the voluntariness of this particular issue was raised by the evidence. Even assuming that it was, however, whether to treat the matter as "plain error" and to thus consider the issue when not preserved in the trial court is a discretionary decision for an appellate court. *Dempsey v. State,* 277 Md. 134, 355 A.2d 455 (1976). In the instant case we do not perceive that the failure to have submitted the issue of voluntariness to the jury was likely to unduly influence them and thereby deprive Brent of a fair trial. See *State v. Hutchinson,* 287 Md. 198, 411 A.2d 1035 (1980).

## (2)

### The Rebuttal Testimony

In rebuttal the State put on twelve witnesses. Brent contends that the evidence obtained through these witnesses was not rebuttal evidence in that it did not explain, directly reply to, or contradict any new evidence brought into the case by him. See *Dobson v. State,* 24 Md. App. 644, 335 A.2d 124 (1975). He also concedes that the question is one resting in the sound discretion of the trial judge. The State counters by stating that of the twelve witnesses Brent made no objection as to the testimony of six of them. As to five others, it is claimed Brent did not object on improper rebuttal grounds.

Our independent review of the record confirms the State's contention; thus, as to *those* latter witnesses, we agree with the State's position. Md. Rule 1085. As to one of the State's rebuttal witnesses, Golden, Brent did specifically object as improper rebuttal. Golden was allowed to testify as to a certain instance when Brent had become angry at one Bolton and had fired a shotgun at Bolton's front door. The State argued that this testimony was proper rebuttal after Brent had produced witnesses who testified, in essence, that he was a "gentle person." We agree that Golden's testimony was proper rebuttal and the trial judge did not abuse his discretion in allowing him to testify.

Although not preserved for review, we add that we have read the record thoroughly and are satisfied that even if proper objection had been made by Brent in this area, we would have found no error.

(3)

### Violation of the "Other Crimes" Evidence Rule

During the course of the trial there was testimony that tended to show Brent may have committed crimes other than those for which he was on trial, and thus he was depicted as a "bad man." This was improper pursuant to *McKnight v. State,* 280 Md. 604, 375 A.2d 551 (1977). In examining the record, and particularly those record references furnished by Brent in this brief, we find this issue was not preserved for our review because no objection was made by Brent except as to one. As a matter of fact, the testimony of drug deals between Brent and one Gordon was brought out by Brent's counsel in his cross examination of Gordon. With respect to Golden's testimony relating to Brent's shooting at Bolton's door with a shotgun, the objection made by Brent was based only on the argument that such was improper rebuttal testimony. Having stated this reason for his objection, he may not now raise the instant issue.

(5)

## Improper Jury Argument

Brent next complains that the trial judge erred in not, *sua sponte,* declaring a mistrial because of "the prosecutor's reference in closing argument to autopsy photographs, and his statement that Stermer would never go home for Christmas." Appellant Brent appears to concede in his brief that no objection was made, nor was any request made for relief. We deem the issue to have been waived. Md. Rule 1085. See also *Conner v. State,* 34 Md. App. 124, 366 A.2d 385 (1976). In any event, reference to the photographs was legitimate argument since they had been admitted into evidence. With regard to Stermer not going home for Christmas, Brent gives us no record reference to such a remark although there was a comment made about a Christmas present for Stermer. We have reviewed the record as to the State's argument and do not find it unnecessarily inflammatory so that there was a clear likelihood the jury was misled or unduly influenced to the prejudice of Brent. *James v. State,* 31 Md. App. 666, 358 A.2d 595 (1976).

(6)

## Request for a Private Trial and a Sequestered Jury

Brent's final assault on his convictions concerns his contention that the trial court erred in denying his motion for a private trial because of media publicity. In argument on the motion Brent's counsel stated to the motions judge that sequestration of the jury was not a viable alternative because of the hardship this would entail in a lengthy trial. In our view Brent's position that he was entitled, as a matter of right, to a private (closed) trial is now untenable in light of *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S. Ct. 2814 (1980), where the Supreme Court concluded that the right to attend criminal trials was implicit in the guarantees of the First Amendment to the U. S. Constitution. In so concluding, however, it was made clear that the right of

the public to know was not an absolute and may sometimes yield to the countervailing right of a defendant to be shielded from prejudicial publicity. As Judge Moylan recently said for this Court in *Patuxent Publishing Corporation, et al. Intervenors v. State,* 48 Md. App. 689, 429 A.2d 554, 557 (1981):

> "They make it clear, however, that there is a heavy burden upon those who would abridge the First Amendment right to establish clearly upon the record a compelling need for such abridgement. They make it clear that before resorting to so drastic a measure, that all lesser and alternative sanctions be explored, such as sanitizing voir dire examination, sequestration of juries, the continuation of a case to allow the immediate impact of publicity to abate, and the removal of a cause to a more remote trial forum. These alternative sanctions may, indeed, work some inconvenience and dislocation upon the parties (including criminal defendants) but are nonetheless, on balance, to be preferred to curtailing the First Amendment freedom of the press. The combination of *Gannett* and *Richmond News,* furthermore makes it clear that this required balancing of interests be undertaken with respect to pre-trial hearings as well as with respect to trials themselves. They make it clear that only so much First Amendment abridgement will be tolerated as is compellingly required. They make it clear that every possible step must be taken to minimize the abridgement." *Id.* at 692-693.

In the present case no removal was sought and Brent conceded that sequestration was not a viable alternative; what he sought was a closed trial. We observe that the trial judge applied a lesser alternative by engaging in sanitizing voir dire examination in which prospective jurors indicated they could ignore media accounts during the trial. We further observe that the trial judge, in his opening remarks to the jury, stated to them:

"Now, then, at the risk of sounding imperious to you, and I don't mean to sound that way, I do want to tell you that I don't want you to read anything about this case in any publication, whether it's newspaper, magazines or any other source, and I don't want you to listen to any news broadcast at all dealing with this case, and I want you not to listen to any radio material dealing with this case, and I know that is somewhat onerous, but, nevertheless, as I have explained, I want to respect your rights and I want to respect the rights of the parties in this case too, and that's the only way we're going to be able to work it, if you totally stay away from any publicity in this case."

In our view the trial judge, sensitive to the competing rights of Brent and the public, struck an even balance between those rights. We see no error.

> *Judgments as to Erman vacated; case remanded for new trial.*
> *Judgments as to Brent affirmed.*
> *Costs to be paid one-half by Mayor and City Council of Baltimore and one-half by appellant Brent.*