MICHAEL WILLIE LIPSCOMB *v.* STATE
OF MARYLAND

[No. 116, September Term, 1968.]

*Decided December 4, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Thomas N. Biddison, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Charles A. Hern-*

don, Jr., *Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Michael Willie Lipscomb, the appellant, was tried jointly with a co-defendant, Eric Dabney, on March 7, 1968 before Judge Anselm Sodaro without a jury in the Criminal Court of Baltimore. Lipscomb was found guilty of rape, robbery with a dangerous and deadly weapon, and the commission of a perverted sex act. He was sentenced to concurrent terms of life imprisonment, twenty years and one year, respectively, under the jurisdiction of the Department of Correction.

On this appeal Lipscomb contends:

(1) He was prejudiced by the implicating testimony of his co-defendant at the joint trial.

(2) The sentence, under the circumstances, constituted cruel and unusual punishment.

(3) The court erred in accepting the *Miranda* statements of the police without ascertaining the existence of a knowledgeable waiver.

Miss Ann Catherine Williams, the alleged victim of the crimes, testified at the trial that on July 16, 1967, between 11:00 a.m. and 12:00 noon, she noticed two youths, whom she identified at the trial as the appellant Lipscomb and his co-defendant Dabney, peering in her basement apartment window; that after she admonished them, they departed, but they returned shortly thereafter to request her permission to take certain items that had been discarded outside her apartment; and that after she consented to the youths' taking certain of these items, Lipscomb returned to tell her that Dabney had been apprehended by a policeman for stealing the items that she had permitted them to take. Miss Williams did not permit entry into her apartment by either of the youths but spoke to them through a barred window and a partially opened door on a chain latch.

She further testified that after waiting approximately five minutes to make certain that Lipscomb had departed, she stepped into the hallway to go outside the apartment building, at which

time Lipscomb grabbed her from behind, pressed a knife to her throat and asked her to engage in sexual intercourse with him; that when she declined, Dabney took her apartment keys, opened the door, and she was forced into the apartment; that Lipscomb struck her in the face when she refused to lie on her bed, after which he forced her to commit fellatio upon him, and thereafter compelled her to have intercourse with him, cutting her arm with his knife during the relationship; that Dabney held her leg down while Lipscomb was engaged in the intercourse; and that before Lipscomb departed, he took her watch from her arm and her ring from her finger. After the youths had left, Miss Williams took a shower, changed her clothes and obtained the assistance of a policeman about a block from her apartment.

On cross-examination Miss Williams denied knowing a girl by the name of Linda Smith. She also testified that she had identified Lipscomb at a lineup almost two weeks after the commission of the crime.

Dr. George Wells testified that he examined Miss Williams at 3:20 p.m. on July 16, 1967 and found a one-quarter inch penetrating laceration of the right upper arm and evidence of sexual intercourse.

Officer William R. Helmick testified that Miss Williams, crying, stopped him about a block from her apartment and told him of her rape and robbery. With the descriptions she had given him, the officer recalled having previously observed two suspects in the area, whom he identified at the trial as the appellant and Dabney. Unable to apprehend them at that time, he again observed Dabney on July 25 and captured him after a chase. The officer further testified that Dabney stated that Lipscomb alone committed the sexual assaults. Appellant objected to Dabney's statement "as against Lipscomb." The trial judge accepted the statement "as against Dabney only and not as against Lipscomb."

Officer Helmick testified that, with Dabney's aid, he apprehended Lipscomb, took him to the police station and there "advised him of his rights." An express written waiver of the right to counsel at the lineup, signed by the appellant, was introduced into evidence.

Lipscomb testified on his own behalf that he had first seen Miss Williams on a Friday, about five days prior to the date of the alleged crimes, at the Greyhound Bus Terminal with her girlfriend, Linda Smith; that he was invited by the girls to Miss Williams's apartment where he kissed the prosecutrix; that he returned to her apartment on July 16 and had consensual sexual relations with her, stealing her watch at the conclusion of the intercourse; and that while he never again saw Linda Smith, he did receive a Christmas card from her, which contained five dollars and her photograph. These items were admitted into evidence.

Eric Dabney then testified and his testimony closely corresponded to that of the victim. He attested to Lipscomb's sexual acts upon Miss Williams and the theft of her watch and ring. On cross-examination, he testified that Miss Williams struggled throughout the incident, and that he was compelled to hold her leg at one point so that Lipscomb would not become angered and kill her.

Appellant contends that the testimony of Dabney, his jointly-indicted co-defendant, was instrumental in the finding of his guilt and thereby prejudiced him. He asserts that consideration of Dabney's testimony at the joint trial vitiated his opportunity for a fair determination on the question of guilt or innocence because of the strong inclination of a co-defendant to give testimony incriminating his co-defendant and exonerating himself. In support of this contention, appellant relies upon *Bruton v. United States*, 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, decided May 20, 1968.

*Bruton* reconsidered and overruled *Delli Paoli v. United States*, 352 U. S. 232, a case which held, in effect, that the trial court's instructions to the jury to disregard a defendant's confession implicating his co-defendant was a sufficient limitation on the effect of the hearsay admission and provided the non-confessing co-defendant with adequate protection on the issue of his guilt or innocence. The *Bruton* court concluded that in a joint trial before a jury the introduction of an extrajudicial statement of one defendant (who did not testify) which implicated his co-defendant violated the latter's Sixth Amendment right to confront and cross-examine the witness against him.

In that case, a joint jury trial for postal robbery, a postal inspector testified that one of the co-defendants, Evans, confessed to him that he and his co-defendant Bruton had committed the crime. The trial judge instructed the jury, in accordance with the Delli Paoli rule, that although the confessing co-defendant's statement (that of Evans) was competent and admissible as against him, it was inadmissible hearsay against the other co-defendant (Bruton) and must be disregarded in determining the latter's guilt. The Supreme Court, in reversing the conviction of Bruton, specifically held at 20 L.Ed.2d, 479-480, 485:

"We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment.

\* \* \*

"[I]n *Pointer v. Texas,* 380 U. S. 400, we confirmed 'that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him' secured by the Sixth Amendment, \* \* \*; 'a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him.'

\* \* \*

"Plainly, the introduction of Evans' confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since Evans did not take the stand. Petitioner thus was denied his constitutional right of confrontation.

\* \* \*

"Here the introduction of Evans' confession posed a substantial threat to petitioner's right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the

> jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination."

We think it clear from the above that the constitutional predicate underlying *Bruton* is the Sixth Amendment right of an accused to confront and cross-examine the witnesses against him.[1] The present case is unlike *Bruton,* however, since here the confessing co-defendant, Dabney, did testify at the trial, and was cross-examined by the appellant, so that his Sixth Amendment right to confront and cross-examine Dabney was not violated. As the appellant had not closed his case prior to Dabney's testimony, such testimony was, under the circumstances, properly in evidence as against the appellant. Of course, the testimony of Officer Helmick that Dabney had told him that appellant was the perpetrator of the crime was not admissible as against the appellant and the court properly so held. We conclude then that appellant's reliance upon *Bruton* is ill-placed, the rationale of that decision not being applicable to the facts of this case.[2]

Appellant's further contention that his life sentence for rape constituted cruel and unusual punishment is likewise without merit. It is well settled that imposition of sentence in a criminal case in this State is a matter peculiarly within the province of the trial judge, *Reid v. State,* 200 Md. 89, *Gee v. State,* 2 Md. App. 61; and that a sentence within limits prescribed by law will be reviewed on appeal only where grossly and inordinately

---

1. The Sixth Amendment right of an accused to confront and cross-examine the witnesses against him is applicable to State prosecutions. See *Pointer v. Texas, supra.*

2. As we recently noted in *Smithson v. State,* 5 Md. App. 378, the Supreme Court, in *Roberts v. Russell,* 392 U.S. 293, 20 L.Ed.2d 1100, 88 S. Ct. 1921, held that *Bruton* must be given completely retroactive application. While the present case was tried several months prior to the decision in *Bruton,* and the constitutional principles articulated in that case would, therefore, inure to appellant's benefit, we have found that under the particular facts of this case *Bruton* is not controlling.

disproportionate to the offense to such an extent that the sentence was evidently dictated not by a sense of public duty, but by passion, prejudice, ill will, or other unworthy motive, *James v. State,* 242 Md. 424, *Fisher v. State,* 1 Md. App. 505.

The sentence imposed was within statutory limits, and there is no showing that it was prompted by any unworthy motive on the part of the trial judge. As the imposition of the death penalty for rape has been upheld as not constituting cruel and unusual punishment, see *Jones v. State,* 247 Md. 530; *Dyson v. State,* 238 Md. 398, *cert. den.* 388 U. S. 106, *a fortiori,* a life sentence for such crime violates no constitutional rights of the appellant.

Appellant's final contention, in which he refers to *"Miranda"* statements and rights, although not clearly articulated, seemingly amounts to this: that the written waiver of appellant's right to counsel at the police lineup was not knowingly and intelligently made. The record discloses that there was no objection made to the written waiver at the trial or to the lineup or in-court identification. As the point was not tried and decided by the lower court, it is not properly before us for review. Maryland Rule 1085.

*Judgments affirmed.*