# MICHAEL LEROY SYE AND ANTHONY RUSSELL BATES
## v. STATE OF MARYLAND

[No. 1472, September Term, 1982.]

*Decided December 7, 1983.*

The cause was argued before MOYLAN, LISS and BISHOP, JJ.

*Michael R. Braudes, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellants.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Kurt L. Schmoke, State's Attorney for Baltimore City,* and *Kerry Fisher, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

Liss, J., delivered the opinion of the Court.

The appellants, Michael Leroy Sye and Anthony Russell Bates, were tried before a Baltimore City jury, presided over by Judge John R. Hargrove, for the murder of one Earl Lightsey. The appellant Bates was convicted of murder in the first degree; the appellant Sye was convicted of murder in the second degree. Upon this appeal, the appellant Sye alone raises the contention:

1) That the evidence was not legally sufficient to support his conviction for second-degree murder;

The appellant Bates alone raises the contention:

2) That Judge Hargrove erred in refusing to permit him to call one James Chase as a defense witness;

Both appellants jointly raise the remaining three contentions:

3) That the trial judge's instruction on the subject of reasonable doubt constituted plain error;

4) That the trial judge erred in excluding evidence of the degree of intoxication of a key State's witness; and

5) That the trial judge erred in denying a motion for trial severance.

The appellant Sye's contention with respect to the legal sufficiency of the evidence answers itself. He argues:

"Firstly, the overwhelming weight of the testimony was that Appellant Sye entered the fray simply to break it up, and not to join in any assault upon the victim. The only evidence to the contrary was provided by Darlene Lightfoot, who obviously was lying in an effort to cover up her own criminal involvement."

It may well have been, as he contends, that the key witness implicating him in the murder "obviously was lying in an effort to cover up her own criminal involvement." The appellant Sye was entitled to have the jury, whose responsibility it is to assess credibility, determine that Darlene Lightfoot "obviously was lying." Judge Hargrove, therefore, was eminently correct in submitting the case to the jury so that they would have that opportunity. They assessed that credibility, as they should have, and what was "obvious" to the appellant Sye was not so "obvious" to the jury.

The appellant Bates alone raises the contention that Judge Hargrove erred in refusing to allow James Chase to testify as a defense witness. When counsel for Bates proffered the testimony of James Chase, the appellant Sye affirmatively objected and it is clear that he has waived any right to join in this contention. Even as to the appellant Bates, we see no merit in the contention. Judge Hargrove declined to permit Chase to testify for two reasons. We think he was correct in both. In the first place, it was established that Chase had been in the courtroom for an entire day of trial in violation of a sequestration order. The State timely raised its objection on that ground. The decision as to the enforcement of the sequestration order is vested in the sound discretion of the trial judge, *McKnight v. State,* 33 Md.App. 280, 290 (1976), and we see no abuse of that discretion. We note, moreover, that the proffer established that James Chase could testify only as to the murder victim's propensity toward violence. Since the appellant Bates had not raised the issue of self-defense and the evidence had not generated any issue of self-defense, the proferred testimony dealt with an issue that was patently immaterial. We see no error.

Both appellants object to the adequacy of Judge Hargrove's instruction to the jury on the subject of reasonable doubt. They are offended at the omission of the phrase "without hesitation." The short answer to the contention is that they

made no objection below and nothing has been preserved for appellate review. Md. Rule 757 f; *Guardino v. State,* 50 Md.App. 695, 703 (1982); *Sine v. State,* 40 Md.App. 628, 632 (1978), but see *Brooks v. State,* 53 Md. App. 285 (1982).

Both appellants contend that Judge Hargrove committed error when he refused to permit the appellant Bates' mother to characterize the degree of intoxication of Darlene Lightfoot, when Darlene Lightfoot came to the mother's home at some time between 4 and 5 A.M. on the morning of the murder to inform Mrs. Bates that her son had been arrested. Judge Hargrove ruled that the degree of intoxication of Darlene Lightfoot some two to three hours after the murder was not an issue in the case. The only testimony of Darlene Lightfoot dealt with events that had occurred some two to three hours before she went to the mother's home. The testimony from the mother that did come in did not reveal any extreme degree of intoxication from which a necessary inference would flow that Darlene Lightfoot was necessarily severely intoxicated some hours before. Evidentiary rulings of this sort are left to the discretion of the trial judge, and the exercise of that discretion will not be disturbed absent a showing of clear abuse. *Tripp v. State,* 36 Md.App. 459 (1977). We see no such clear abuse.

The most significant contention raised by the appellants is that Judge Hargrove committed error when he refused to sever their trials from each other and also from the trial of a codefendant, Darryl Brooks.[1] We note initially that this contention was raised at the trial and, therefore, preserved for appellate review only by the defendant Bates. At the July 12, 1982 arraignment of all three codefendants, Brooks moved for a severance, which motion was denied. Counsel for both the appellants Sye and Bates were specifically asked if they had any motions and they replied in the negative. The

---

1. Brooks was acquitted.

appellant Bates, however, did one day later file a belated motion for severance, which was considered by the court and denied. The appellant Sye never, early or late, moved for a severance. He now seeks to avoid the foreclosing effect of his failure to request a severance by the clever argument that if the severance had been granted to the appellant Bates and the codefendant Brooks, then he, Sye, would have received a separate trial whether he had moved for it or not. Such appellate "piggybacking" will not suffice.

Just such a situation was before this Court in *Erman and Brent v. State,* 49 Md.App. 605 (1981). We entertained the severance question with respect to one of the codefendants but declined even to consider it with respect to the other. As to that codefendant who had not preserved the point for appellate review, we said, at 49 Md.App. 612:

"First, we note that Brent argues in his brief that he had moved for a severance and mistrial during the course of the trial itself. The State contends that he did no such thing, neither did he join in Erman's motions. Brent has not provided us with any reference to the record where it would be reflected that he did so, and our review does not so indicate. As to Brent, therefore, we conclude he has waived any right to raise this issue. Md. Rule 1085."

The appellant Bates argues that he was entitled to a severance because his version of the altercation that led to the killing differed from the versions given by his codefendants Sye and Brooks.[2] He argues that these conflicting defenses put the jury in a position where it could not "credit each defense and must necessarily conclude that one defendant is lying." Just such a contention was before this Court in *Lipscomb v. State,* 5 Md.App. 500 (1968), and was rejected by us, speaking through then Chief Judge

_____
2. Brooks' testimony and Sye's testimony did not differ markedly from each other.

Murphy. In that trial of two codefendants for rape and armed robbery, the defendant Lipscomb testified that the sexual encounter between him and the complaining witness was completely consensual. The codefendant Dabney testified, in stark contrast, that the victim had struggled throughout the incident and that Dabney had helped Lipscomb hold her down. Lipscomb claimed that this testimony of Dabney, given as a defendant, was prejudicial to him and asserted, as the appellant Bates does here, that at a joint trial there is a "strong inclination of a co-defendant to give testimony incriminating his co-defendant and exonerating himself." 5 Md.App. at 504.

In pointing out that prejudice consists not of being damaged or incriminated by the evidence in issue but only of being damaged or incriminated by evidence that is inadmissible, we observed that what was involved was the classic problem dealt with by the Supreme Court in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). At a joint trial of two codefendants, one codefendant may indeed be prejudiced by the admission into evidence of a confession given by the other codefendant. The prejudice consists of hearsay evidence being heard by the jury which would not be admissible if the objecting defendant were to be tried alone. Where the codefendant who gives the damaging version actually takes the stand and testifies, however, there is no problem.[3] The testimony, though damaging to be sure, is competent and, therefore, admissible. Prejudice as a term of art means damage from inadmissible evidence, not damage from admissible evidence. As Chief Judge Murphy concluded in *Lipscomb v. State,* at 5 Md.App. 506:

> "We think it clear from the above that the constitutional predicate underlying *Bruton* is the Sixth Amendment right of an accused to confront and cross-examine the witnesses against him.[1] The

---

3. Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971).

present case is unlike *Bruton,* however, since here the confessing co-defendant, Dabney, did testify at the trial, and was cross-examined by the appellant, so that his Sixth Amendment right to confront and cross-examine Dabney was not violated." (Footnote omitted).

The pertinent question is not whether the State might have had, in some other procedural configuration, a more difficult time in obtaining the testimony of Brooks and Sye. The pertinent question rather is whether the testimony of Brooks and Sye was competent and admissible. It clearly was. Bates was damaged but the damage was legitimate. He received a fair trial with the State using only admissible evidence. The State did not offer any evidence admissible against the others but inadmissible against Bates. We are not dealing with the type of situation described by Judge Couch in *Erman and Brent v. State, supra,* at 49 Md.App. 615:

> "In *Shingleton v. State,* 39 Md.App. 527, 387 A.2d 1134 (1978), we recognized that inadmissible evidence could have a spill-over effect on a co-defendant which could make it difficult for a jury 'to separate the wheat from the chaff.' "

A defendant has no due process right simply to make it more difficult, or perhaps even impossible, for the State to obtain competent evidence of his guilt. Even the appellant Bates does not claim that the evidence was incompetent. This is the critical factor that distinguishes the situation before us diametrically from the case of *Day v. State,* 196 Md. 384 (1950), from which the appellant Bates takes false hope. On the issue of severance, *Day v. State,* concluded, at 196 Md. 395:

"Under ordinary circumstances, where two parties are accused of the same crime, it is in the interest of both justice and economy that they should be tried together, but under the circumstances of this case, we have come to the conclusion that it was an abuse of discretion by the trial court, after it knew what evidence was to be produced, not to grant the severance prayed, and we will therefore reverse the case as to each defendant on this ground so that a new and separate trial may be had as to each."

*Day*'s holding that there was an abuse of scretion was explicitly "under the circumstances of this case." To distill that holding, it, therefore, becomes necessary to consider the circumstances of that case.

Although *Day* was a pre-*Bruton* case, it dealt with precisely the *Bruton* problem of the inefficacy of curative instructions when a confession is admissible against one codefendant but not against the other. Two codefendants asked for a trial severance in the *Day* case and were denied it. The two defendants had given to the police a total of five statements, in the course of which they both accused each other and contradicted each other. They did not take the stand to testify. The statements were admitted. The Court of Appeals analyzed at great length the prejudicial spill-over effect that each defendant's statements had upon the other. It analyzed at great length the ineffectiveness of a curative instruction. Indeed, all of the cases cited and quoted from by the Court of Appeals dealt with similar problems, the admission at a joint trial of confessions and the inevitable prejudice accruing to the nonconfessing codefendant. The Court of Appeals left no doubt as to the precise nature of the problem and the precise nature of the prejudice that resulted from the failure to sever the trials:

"Under such circumstances it would be a practical impossibility for the jurors to dismiss from their minds the statements of Lewis against Day when considering the Day case, and to dismiss the statements of Day against Lewis when considering Lewis's case. No juror, no matter how intelligent and how desirous of doing his duty, and obeying the instructions of the court, could rid his mind of the impression necessarily made upon him by these statements of each of the defendants against the other." 196 Md. at 390.

On one other occasion, this Court found an abuse of discretion in the denial of a trial severance under similar circumstances. In *Erman and Brent v. State, supra,* we quoted Md. Rule 745 and we pointed out that a defendant is entitled to a severance only when it appears that there will be "prejudice to a defendant when joined for trial with another defendant and that this prejudice must be such as to prevent him from receiving a fair trial." 49 Md.App. at 614. We there found prejudice to the defendant Erman because of the repeated admission into evidence of items admissible against the codefendant Brent but not admissible against Erman. We observed that "the type of evidence as to Brent only which caused the trial judge to instruct the jury repeatedly, seems to us to have been increasingly prejudicial to Erman, particularly as the number of incidents grew." 49 Md.App. at 616. With respect to this spill-over effect of the inadmissible evidence, we concluded, "[W]e view the cumulative effect of such evidence as denying Erman a fair trial." *Ibid.* We spoke of a number of instances involving "testimony of alleged criminality or misconduct on the part of Brent which in no way involved Erman." 49 Md.App. at 612. We observed that "[t]his evidence clearly would not have been admissible in a separate trial of Erman alone." *Ibid.*

In short, both *Day* and *Erman* involved prejudice arising from the impact of inadmissible evidence, thereby denying a defendant a fair trial. There was no inadmissible evidence in the case now before us, and the appellant Bates was not, therefore, denied a fair trial.

*Judgments affirmed; costs to be paid by appellants.*