855 A.2d 381

**Marty Dean IMES**

v.

**STATE of Maryland.**

**No. 2264, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Aug. 16, 2004.

Michael J. Tomko (Lawrence B. Rosenberg, on brief), Baltimore, for appellant.

Celia Anderson Davis (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., HOLLANDER, BISHOP, JOHN J., JR., (Retired, specially assigned), JJ.

MURPHY, C.J.

In the Circuit Court for Baltimore City, a jury (Hon. Allen L. Schwait, presiding) convicted Marty Dean Imes, appellant, of attempted second degree murder and several related charges. The State's evidence was sufficient to establish appellant's guilt. Although appellant does not argue to the contrary, he does argue that he is entitled to a new trial because (1) the jury was permitted to review exhibits not properly admitted into evidence; (2) evidence of his post-*Miranda* silence was erroneously admitted; and (3) the trial court erroneously denied his mid-trial motions for severance and/or mistrial. In support of those arguments, appellant presents three questions for our review:

I. Did the trial court err in allowing an exhibit, not moved into evidence during trial, to be reviewed by jurors in the jury room during deliberation?

II. Does the cumulative prejudicial effect of the admission of evidence regarding Appellant's post-*Miranda* silence merit the award of a new trial?

III. Was the Appellant prejudiced when the trial court erroneously denied his motions for severance, and demand for mistrial related thereto?

We answer question I in the affirmative, but hold that this error was harmless. We answer questions II and III in the negative. We shall therefore affirm the judgments of the circuit court.

## BACKGROUND

Appellant and his co-defendant, Carlos Rodriguez (Rodriguez), were tried together. The jurors were entitled to accept all, part, or none of the State's evidence, which included the following testimony. Stephen Sirbaugh was shot in his right hand while riding in an automobile being driven by Vasillo "Billy" Harris. The bullet that struck Mr. Sirbaugh was fired by appellant, who was hanging out of the sunroof of an automobile being driven by Rodriguez. Both cars were traveling on Elliott Street in Baltimore City when the shooting occurred.

Rodriguez called a neighborhood friend to testify that Harris had stated to him that Rodriguez was not the driver. At this point, appellant moved for a severance, contending that Rodriguez's witness implicated appellant. That motion was denied.

Rodriguez was acquitted; appellant was found guilty.

### Discussion

### I.

■ Rodriguez consented to a tape recorded interview. During the trial, the jurors listened to the recording of that

interview and a typed transcript of the recording was handed to each juror. Although the tape was admitted into evidence, the transcript was not. Because copies of the transcript were never retrieved from the jury, several jurors took their copies into the jury room. Although this fact was not brought to Judge Schwait's attention in time for him to take appropriate corrective action, appellant nonetheless argues that the presence of the "unadmitted" evidence in the jury room entitles him to a new trial. There is no merit in that argument.

■ While Maryland Rule 4–326 provides that jurors may take "exhibits which have been admitted into evidence" into the jury room, it is clear that "unadmitted evidence" should not get into the jury room. When such an error occurs, however, the appellant is not automatically entitled to a new trial. *Merritt v. State*, 367 Md. 17, 33, 785 A.2d 756 (2001). The harmless error standard is applicable in this situation. *See Merritt*, 367 Md. at 33, 785 A.2d 756; *Sherman v. State*, 288 Md. 636, 641, 421 A.2d 80 (1980); *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976).

In *Merritt, supra,* the Court of Appeals ordered a new trial to a murder defendant convicted by a jury whose members were exposed to such inadmissible evidence as (1) statements by the investigating officer in an application for a search warrant, (2) the appellant's statement about his gun ownership that had been redacted from other admitted testimony, and (3) statements about the appellant's other criminal propensities. 367 Md. at 34–35, 785 A.2d 756. By contrast, in the case at bar, the "unadmitted" evidence that was in the jury room during deliberations had already been (1) presented to the jury by agreement of counsel, and (2) used by appellant's counsel during cross-examination. Moreover, appellant's counsel had the opportunity to—but did not—request that the jurors be directed to return their copies of the transcript after the recorded conversation had been played in open court.

■ It is well settled that a properly authenticated transcript of a tape recording is admissible. *Raimondi v. State*, 265 Md. 229, 232, 288 A.2d 882 (1972). In the case at bar,

however, the transcript was made available to assist the jurors. Under these circumstances, appellant was entitled to request a jury instruction to the effect that the transcript was being

> given to you as an aid or guide to assist you in listening to the tapes [which] are not in and of themselves evidence.... You alone should make your own interpretation of what appears on the tapes based on what you heard. If you think you heard something differently than appeared on the transcript, then what you heard is controlling.

Sand, Siffert, Loughlin, & Reiss, *Modern Federal Jury Instructions*, § 5–9 (2003). No such instruction was requested.

In *Vaughn v. U.S.*, 367 A.2d 1291 (D.C.1977), the District of Columbia Court of Appeals affirmed a drug conviction even though a package of syringes and a chemist's report had been erroneously sent into the jury room. The *Vaughn* Court held that the chemist's report "only confirmed in writing what the jury already heard in the chemist's testimony." *Id.* at 1295 n. 8.

Like *Vaughn*,[1] the transcript at issue in the case at bar "only confirmed in writing what the jury already heard" in open court. In *Dorsey*,[2] the Court of Appeals stated:

> [W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such

---

1. As to the jury's viewing of the package of syringes in the context of other properly admitted evidence in the case, the court "fail[ed] to find that the jury's limited view of this unadmitted evidence was so prejudicial to the appellant's case that [the jury's] judgment was substantially swayed." 367 A.2d at 1295.

2. In *Dorsey, supra,* error occurred when a police officer was permitted to testify about the percentage of his arrests that resulted in convictions. 276 Md. at 641–42, 350 A.2d 665. The Court ordered a new trial, concluding that (1) the evidence against appellant was not overwhelming, and (2) the erroneously admitted testimony might well have influenced the jury's decision. *Id.* at 661, 350 A.2d 665.

error cannot be deemed "harmless" and a reversal is mandated.

276 Md. at 659, 350 A.2d 665. *See also Merritt,* 367 Md. at 31, 785 A.2d 756; *Sherman,* 288 Md. at 641, 421 A.2d 80. Applying this test to the case at bar, we are persuaded beyond a reasonable doubt that the jurors' retention of copies of the transcript "in no way influenced the verdict."

## II.

Appellant argues that the State should not have been permitted to present the following testimony:

[Prosecutor]: Detective Viguel, after you went through this form with [appellant], did [appellant] agree to speak with you?

[Viguel]: Yes, sir.

[Prosecutor]: Did he agree to speak with you on tape?

[Viguel:] No, Sir.

[Prosecutor]: Can you tell us what the nature of this conversation was with [appellant]?

[Appellant's counsel]: Your honor, I object.

\* \* \*

[Appellant's counsel, at a bench conference]: As soon as he asked him do you agree to speak to him on tape, he said no, that is it. He cannot ask that. That is bringing in that he is invoking his privilege.

\* \* \*

[Appellant's counsel]: My objection is to what he asked him. He is saying did he speak to you, agree to speak to you. Yes. Did he agree to make a taped statement? Now that is bringing out that he is not doing something. You do not have to give a statement. You do not have to give an oral statement. I think it is improper the way it is being done that is all.

\* \* \*

[The Court, discussing the questioning]: All right, did he agree to speak to you? Then he agreed to give you a taped

statement? The answer to the first one was yes, and the answer to the second one was no?

[Prosecutor]: Yes, sir.

[The Court]: All right, I will strike the questions and the answers.

[Appellant's counsel]: Thank you.

[The Court]: I will instruct the jury accordingly.

\* \* \*

[The Court to the jury]: Ladies and gentlemen, let me instruct you then on the last two questions and answers. The next to last question was did he agree to speak to you. The answer is yes. Please strike the question and the answer from your minds. And the last question was did he agree to give you a taped statement. The answer was no. Please strike the question and answer from your minds. Next question, please?

\* \* \*

[Prosecutor]: Sir, can you tell us what the statements were?

[Viguel]: Sure. I asked [appellant] about any possible involvement he may have had in this incident. He denied any involvement. But he further advised that he had heard that the victim had fired from the other vehicle.

[The Court]: Sir, you have to keep your voice up a little better than that. Please—

[Viguel]: Yes, Your Honor, I apologize.

[The Court]: That is all right, go ahead.

[Viguel]: When I asked [appellant] how he had come to learn his information, he was evasive and didn't—

[Appellant's attorney]: Objection. May we approach?

[The Court]: I did not hear what he said. What did he say?

[Appellant's attorney]: That is what I do not know, what he said.

[The Court]: All right, come up, please.

[Bench conference]

[The Court]: Yes?

[Appellant's attorney]: This is what we spoke about earlier. He is giving his opinion: he became evasive.

[The Court]: Oh, he cannot say that. I did not hear that. Did he say that?

[Appellant's attorney]: Well, that is what he said. He said evasive.

[The Court]: All right, I am going to strike that reference to evasive. Please disregard that ladies and gentlemen. Do not give us opinions, sir. Do not give us conjecture.

The record shows that appellant's counsel requested and received appropriate relief from the trial judge on each occasion at issue. In *Ball v. State,* 57 Md.App. 338, 470 A.2d 361 (1984), this Court refused to grant a new trial to an appellant who had been granted all the relief that the trial judge was asked to provide:

When the appellant [ ] objected to the State's argument . . . the court sustained the objection. Nothing more was requested. The appellant [ ] did not ask for a curative instruction. The appellant [ ] did not move for a mistrial. It would certainly have been the height of irresponsibility for the trial judge to have declared a mistrial *sua sponte,* whether the appellant wanted one or not. The same thing occurred when the appellant [ ] objected to what he deemed to be an oblique reference to the fact that he had not taken the stand. The objection was sustained. In a nutshell, the appellant [ ] got everything he asked for. This is not error.

*Id.* at 358–59, 470 A.2d 361. We shall, however, consider the merits of appellant's "unfair prejudice" arguments.

 As to the testimony that appellant refused to give a tape recorded statement, because this refusal was simply "not an invocation of his right to remain silent, the testimony . . . regarding this refusal cannot be construed as an infringement upon his constitutional privilege against self-incrimination." *Crosby v. State,* 366 Md. 518, 534, 784 A.2d 1102 (2001). As to the testimony about appellant's post-*Miranda* evasiveness, we must determine whether "the damage in the form of prejudice to the defendant transcended the curative effect of the instruc-

tion." *Rainville v. State,* 328 Md. 398, 408, 614 A.2d 949 (1992).

The *Rainville* Court examined five factors to determine whether a mistrial was required. We shall consider whether (1) the reference was repeated; (2) the reference was solicited by counsel or was inadvertent and unresponsive; (3) the evidence was important to the case; (4) the credibility of the witness who made the reference is a crucial issue; and (5) a great deal of other evidence exists. *Id.* (quoting *Guesfeird v. State,* 300 Md. 653, 659, 480 A.2d 800 (1984)). Applying these factors, we conclude as follows:

**Factors that favor the State.** (1) The reference was not repeated, it was resolved in a bench conference, and a curative instruction was promptly given.[3] (2) The reference seems to have been inadvertently solicited while the prosecutor was introducing the admissible statement and a conversation that the appellant actually had with the investigating officer. (3) The State's case included the victim's positive identification of appellant.

**Factors that favor the appellant.** (1) Because the witness was a police investigator, his testimony was important to the case. (2) The credibility of the witness was an important factor in the case.

Based on the above analysis, we conclude that Judge Schwait's prompt action was sufficient to protect appellant from the danger of unfair prejudice. Under these circumstances, the extreme remedy of a mistrial would not have been appropriate, even if one had been requested.[4]

---

3. "[A]n appropriate curative instruction may prevent material prejudice." *Webster v. State,* 151 Md.App. 527, 557, 827 A.2d 910 (2003). If a curative instruction can solve the prejudice, it "must be timely, accurate and effective." *Carter v. State,* 366 Md. 574, 589, 785 A.2d 348 (2001).

4. From the record it appears that appellant's counsel was satisfied with the curative instructions.

■ Appellant argues that the cumulative effect of the testimony at issue warrants reversal. "Essentially, it is our task to determine whether the 'cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is *no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded.*'" *Harmon v. State*, 147 Md.App. 452, 468, 809 A.2d 696 (2002)(quoting *Ross v. State*, 276 Md. 664, 674, 350 A.2d 680 (1976)) (emphasis added).

[■ Because (1) the complained-of testimony was innocuous and slight, and (2) in both instances, Judge Schwait struck the testimony and provided a curative instruction, we are persuaded that appellant was not entitled to any other relief. "[I]t is presumed that the jury was capable of following the instructions of the judge in such matters." *Wilson v. State*, 261 Md. 551, 570, 276 A.2d 214 (1971); *Webster*, 151 Md.App. at 557, 827 A.2d 910 (citing *Wilson* ). Appellant is not entitled to a new trial on the basis of "cumulative" prejudice.

## III.

■ Appellant argues that Judge Schwait committed reversible error when he denied appellant's mid-trial motion to sever and motion for a mistrial when Rodriguez called a witness to impeach the victim's testimony.[5] As a general rule, because "[t]he trial is not over until all parties have finally rested[,] . . . [f]or purposes of what evidence could properly be considered by the fact finder in arriving at the ultimate verdict, each co-defendant at a trial properly joined is susceptible to all of the evidence properly received before the ultimate closing of the entire case and as to all parties." *Murray v. State*, 35 Md.App. 612, 617–18, 371 A.2d 719 (1977). There are, however, situations in which the denial of a defendant's mid-trial motion for severance constitutes an abuse of

---

**5.** Rodriguez called Daniel James Schaeffer to testify that "Billy" Harris told Schaeffer that a man named "Lenny" was driving the car from which the shots were fired.

discretion. *Erman & Brent v. State,* 49 Md.App. 605, 616, 434 A.2d 1030 (1981).

The following transpired during the cross-examination of Mr. Schaeffer:

Question [by Assistant State's Attorney]: So when was it that Billy lived with you? What is the time period?

[Schaeffer]: He moved in my house about, I'd say June of 2000 or May of 2000.

\* \* \*

Q: How long have you known Billy?

A: A couple of years.

\* \* \*

Q: When you spoke to Billy in May, the middle of May, you recall, what was it he said to you?

A: He said it wasn't [the co-defendant] driving the car, that he was sure it was Lenny.

Q: He was definite about that, is—

A: Yes.

Q: —that right?

A: Yes.

Q: Did he talk to you about the circumstances of the shooting?

A: Not that I remember.

Q: Did you [sic] tell you about who he was with when the shooting happened?

A: Yes.

Q: Who did he say he was with?

A: I don't know his first name. I just know him by his nickname. His name is Dirt.

Q: What did he tell you about the shooting?

[Appellant's counsel]: Objection.

The Court: Overruled.

[Appellant's counsel]: May we approach?

The Court: No.

[Schaeffer]: Just basically what had happened before it all started and what was going on during it; you know, how somebody got beat up with a gun. After that, they started shooting.

[Assistant State's Attorney]: Did he say it happened right after the other, one right after the other?

[Appellant's counsel]: Objection.

The Court: Overruled: It is cross-examination. Go ahead, please.

[Schaeffer]: I'm not—

[Appellant's counsel]: Your Honor, may we approach just—

The Court: Yes, come on up, come on up.

The Court [at the bench]: Go ahead.

[Appellant's counsel]: It may be cross-examination, but I did not call this man as a witness and I am not subject to the same cross-examination as—we are separate entities. I am going to ask for a severance at this point. I mean that—

The Court: Ask for a severance at trial?

[Appellant's counsel]: Yes, this is classic hearsay. This has absolutely nothing to do with it. The person is not here. It has got nothing to do with this—it is just not relevant to my client.

[Assistant State's Attorney]: Your Honor, respectfully, I am looking to draw as much detail from this kid because I think it is unusual that Billy just up and says oh, it was not Carlos.

The Court: Well, I understand that. But tell me about this technical business of two defendants and hearsay, one against the other. What about that?

[Assistant State's Attorney]: The best I can do, Your Honor, is to try to stay away from him talking about your client.

[Appellant's counsel]: But he has already done that by implication and that is just not—

The Court: How has he done it by implication?

[Appellant's counsel]: They were shooting back. It was a fight—the thing with the gun and they were shooting back.

The Court:—

[Appellant's counsel]: That is pretty—no, but that corroborates what Billy told everybody else before. It definitely is—my client is the only one who has been named as shooting anybody in the whole trial. My client is the only one who has been supposedly involved in a fight with a gun this whole trial, not anybody else.

[Co-defendant's counsel]: I would not ask the Court—it is my case.

The Court: Well, don't set us up for the Court of Special Appeals.

[Appellant's counsel]: I don't want to.

* * *

The Court: Okay, forget the technical Bruton content. I mean, he has not mentioned your client but you insist that by inference he is. How is he mentioning your client by inference?

[Appellant's counsel]: Judge, he said there was a fight over a gun and then they started shooting. Well, my client is the only one who was involved with a gun, alleged to have been involved with a fight at the bar, and then he was involved— you know, he is the only one alleged to have been the shooter. So who else? I mean, who else could he be referring to? And I just—

The Court: We have gone pretty far on that in this case. I am not going to give you a severance at this point. You are going to have to preserve.

[Appellant's counsel]: I am going to ask for a mistrial.

The Court: What is that?

[Appellant's counsel] I am going to ask for a mistrial.

The Court: What is the basis? On this basis?

[Appellant's counsel]: Yes—

The Court:—of this?

[Appellant's counsel]—this basis.

The Court: All right, the motion is denied. You are going to have to preserve this for appeal, and maybe we will all learn something.

The trial court has discretion to grant or to deny a request for a defendant's mid-trial severance. *Erman & Brent v. State, supra,* 49 Md.App. at 614, 434 A.2d 1030. When deciding whether the trial court abused its discretion in denying a defendant's mid-trial request for severance (or mistrial), the appellate court asks: Was there unfair prejudice to the appellant that prevented the appellant from receiving a fair trial? *Sye & Bates v. State,* 55 Md.App. 356, 365, 468 A.2d 641 (1983) (discussing *Erman & Brent, supra* ). Prejudice in this context has been defined as "damage from inadmissible evidence. . . ." *Sye & Bates,* 55 Md.App. at 362, 468 A.2d 641.

> A defendant is deemed to have been prejudiced by a joint trial when the joining of a co-defendant or co-defendants (1) permits the State to introduce, against a particular defendant, otherwise inadmissible evidence, and (2) that otherwise inadmissible evidence tends to contradict the defendant's theory of the case.

*Moore & Summers v. State,* 84 Md.App. 165, 169, 578 A.2d 304 (1990) (citations omitted).

In *Sye & Bates, supra,* appellant Bates argued that he was entitled to a severance because his version of the crime differed from that of his co-defendants. 55 Md.App. at 361, 468 A.2d 641. This Court concluded that the appellant's right to a fair trial was not offended because "[t]he State did not offer any evidence admissible against the others but inadmissible against Bates." *Id.* at 363, 468 A.2d 641.

In *Day v. State,* 196 Md. 384, 76 A.2d 729 (1950), two defendants were tried together for the murder of a trolley driver.[6] Each defendant admitted being present at the scene

---

**6.** *Day* was decided several years before *Bruton v. U.S.,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which dealt with the admission of a co-defendant's confession. The *Bruton* Court held that,

of the crime, but implicated the other in the actual killing. *Id.* at 387, 76 A.2d 729. Motions for severance were filed and denied. The court was informed that these statements would be used, but nonetheless denied pre-trial motions to sever and attempted to solve any prejudice with a jury instruction. *Id.* at 387–88, 76 A.2d 729. After reviewing cases from other jurisdictions,[7] the *Day* Court concluded that, under those circumstances, "it was an abuse of discretion by the trial court, after it knew what evidence was to be produced, not to grant the severance prayed, and we will therefore reverse the case as to each defendant on this ground so that a new and separate trial may be had as to each." *Id.* at 395, 76 A.2d 729.

> In *Erman, supra,* this Court
>
> found prejudice to the defendant Erman because of the repeated admission into evidence of items against the co-defendant Brent but not admissible against Erman. We observed that "the type of evidence as to Brent only caused the trial judge to instruct the jury repeatedly, seems to us to have been increasingly prejudicial to Erman, particularly as the number of incidents grew."

*Sye,* 55 Md.App. at 365, 468 A.2d 641 (quoting *Erman,* 49 Md.App. at 616, 434 A.2d 1030).

---

> [d]espite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross examination. The effect is the same as if there had been no instructions at all.

*Id.* at 137, 88 S.Ct. 1620. Although decided earlier, the holding in *Day* seems to be in accordance with the principles stated in *Bruton.*

7. The *Day* Court quoted with approval (1) the case of *Flamme v. State,* in which the highest court of Wisconsin concluded that if a confession by one co-defendant was "considered proof of the guilt of [the confessing defendant] . . . then it inevitably followed that it proved the offense charged against [the other defendant]." *Id.* at 393, 76 A.2d 729 (quoting *Flamme,* 171 Wis. 501, 177 N.W. 596, 598 (1920)); and (2) an Illinois case concluding that jury instructions "could not cure the damage already done. While theoretically, the instruction withdrew the evidence from the consideration of the jury, nevertheless the prejudicial effect of the testimony inevitably remained." *Id.* at 394, 76 A.2d 729 (citing *People v. Patris,* 360 Ill. 596, 196 N.E. 806, 808 (1935)).

■ In the case at bar, Mr. Schaeffer's testimony was vague and did not directly implicate appellant. Although appellant's trial counsel argued that "it is just not relevant to my client," there is no merit in that argument.[8] Mr. Schaeffer's testimony, which was not generated by the State, was arguably exculpatory in that it supported a *"falsus in uno falsus in omnibus"* argument as to the credibility of the victim.[9] We therefore conclude that Judge Schwait did not abuse his discretion in denying appellant's mid-trial motions for severance or mistrial.

**JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.**

---

8. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5-401.

9. A trial judge is not required to give an instruction with respect to evidentiary inferences. *Patterson v. State*, 356 Md. 677, 685, 741 A.2d 1119 (1999). Because the *falsus in uno falsus in omnibus* theory is based upon an evidentiary inference, appellant did not have a right to a jury instruction on that theory. Courts that include evidentiary inferences in jury instructions are often requested to instruct the jury that

[i]f a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you think it deserves.

27 F.R.D. 39, 61 § 3.05 (1961); *see also* 1A Fed. Jury Prac. & Instr. § 15.06 (5th ed.). Even though appellant was not entitled to a *falsus in uno* ... jury instruction, his counsel was entitled to argue that-because Mr. Schaeffer's testimony proved that Mr. Harris had lied about appellant's co-defendant-the jurors should conclude that Mr. Harris had lied about appellant as well.