923 A.2d 143

Tjane Charmeise MARSHALL

v.

STATE of Maryland.

No. 2642, Sept. Term, 2004.

Court of Special Appeals of Maryland.

May 18, 2007.

Stacy W. McCormack (Nancy Forester, Public Defender, on brief), for appellant.

Michelle W. Cole (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., DEBORAH S. EYLER and MEREDITH, JJ.

MURPHY, C.J.

In the Circuit Court for Howard County, a jury (Hon. Dennis M. Sweeney, presiding) convicted Tjane Charmeise Marshall, appellant, of first degree murder and use of a handgun in that crime of violence. Appellant does not argue that the State's evidence, which included incriminating statements he made during a "taped conversation" between himself and one Rashaun Wall, was insufficient to establish that appellant committed those crimes on May 4, 2003. Appellant

does argue, however, that there are three reasons why he is entitled to a new trial:

I. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO ADMIT A TRANSCRIPT OF THE TAPED CONVERSATION BETWEEN THE APPELLANT AND RASHAUN WALL INTO EVIDENCE WHEN THE TRANSCRIPT WAS PREPARED BY ONE OF THE LEAD DETECTIVES IN THE CASE AND WAS REPEATEDLY CHALLENGED BY DEFENSE COUNSEL AS INACCURATE.

II. THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE DEFENSE TO INTRODUCE EVIDENCE WHICH WOULD HAVE SUPPORTED ITS THEORY THAT SOMEONE OTHER THAN THE APPELLANT COMMITTED THE MURDER.

III. THE TRIAL COURT ERRED IN ALLOWING IMPROPER CLOSING ARGUMENT.

For the reasons that follow, we shall affirm the judgments of the circuit court.

### Factual Background

In the words of appellant's brief:

At trial, it was the State's theory that the appellant killed [the victim] ... around 1:00 a.m. on the morning of May 4, 2003 because he didn't want to have anymore children.

\* \* \*

Without any physical evidence or eyewitness identification placing the appellant at the scene, the State was left with cell tower activity records that supposedly placed him somewhere in Columbia during that time frame, the testimony of Wall regarding his knowledge and involvement of the crime, and the taped conversation between Wall and the appellant....

Throughout the trial, the defense maintained that he was not the person who committed the murder. In fact, the appellant elected not to have the lesser included offense of second degree murder, as he maintained that he was not the

shooter.... In support of [appellant's] theory, the defense elicited testimony from the officers that other suspects were developed early on in the investigation and that two of the individuals both had possible motive and the opportunity to commit the crime.

During the trial, (1) over the objection of appellant's trial counsel, each juror was provided with a copy of the transcript of the "taped conversation" between appellant and Mr. Wall, and (2) the defense was prohibited from introducing items recovered from the victim's residence that, according to appellant's trial counsel, should be admitted on the issue of whether the victim was murdered by someone other than appellant.

During the State's argument in rebuttal, appellant's trial counsel (1) interposed an "improper rebuttal" objection to the prosecutor's comment that appellant was "up to no good in this area," (2) moved for a mistrial when the prosecutor stated that the victim "was a member of our community ... she lived here among us," and (3) requested "a curative instruction" that the jurors not "consider [the residence of appellant or the residence of the victim] in any way ..." Judge Sweeney (1) overruled the objection, (2) denied the motion for mistrial, and (3) refused to deliver a curative instruction.

## I.

In the words of appellant's brief:

The conversation between Wall and the appellant was unquestionably the "centerpiece of the State's evidence in this case."... It is interesting to note, however, that as the State, throughout the closing arguments referred to the defendant's "own words" as those that will convict him, it never relied on those words alone. While the State did play several portions of the audio taped conversation between Wall and the appellant, it only did so while the corresponding portions of the transcript were being displayed on a 12 by 15 foot screen.

The record shows that appellant's trial counsel argued that the transcript should be excluded on "inaccuracy"

grounds because it was the most recent of several transcripts, to which the authenticating witness—Detective Daniel Lenick—had made "a number of changes" as a result of his "interpretation" of what he heard on the audiotapes after the tapes had been "enhanced" by FBI technicians. The record also shows, however, that Judge Sweeney delivered the following instructions before the jurors were provided with the transcripts:

Now ladies and gentlemen. . . . what is going to be played to the jury and that is going to be provided does not include the entire conversation that took place on that [day]. And it was, it's been agreed that as would be common in any conversation, that a lot of the conversation that took place didn't have anything to do with the matter that you all need to consider.

And so the final version excludes [portions of the conversation] that have been either suggested by one side or the other and approved by the Court, to take out of what you're going to hear anything that doesn't have to do with the matter that you need to decide. So they are irrelevant, extraneous conversations that you don't need to hear. You're hearing the parts that have some relevance to the issues that are before you, because I think you will see some disjointed things.

And the gentlemen [sic] who is here is someone who is going to, a technical person whose [sic] going to aid in with the conduct of this tape. Now ladies and gentlemen you will be getting a copy of the transcript which we're going to give to each of you. This transcript was prepared as been stated in the testimony given by the detective here and you heard as the defense has pointed out. And, in fact, as the prosecutor has pointed [out] there have been—this transcript was prepared by the detective utilizing the process he utilized.

This transcript will be furnished to you for your guidance as you listen to the tapes or in clarifying portions of the tape which are difficult to hear and/or for the purpose of identifying the speakers on the tape. You should be aware

that the transcript that is, that has been prepared is an effort to provide that aid but it is important that you understand that you are the ones that decide what you're hearing on that tape, and don't be persuaded that what the transcript says is necessarily the case.

As you will, I'm sure hear, there is plenty of room on the tape, for differences of opinion, for whether something can be heard, something can't be heard, and while best efforts may have been made, there remains and perhaps a substantial number of areas where there can be legitimate disagreements that will be focused on or pointed out to you by the defense in this case. And you should keep your focus that the tape is, that you're hearing is the evidence of that conversation.

That transcript is an aid to you to assist you but cannot be taken as the definitive version of this. The definitive version, quite frankly, ladies and gentlemen, is the version that you all decide after your listening and whatever other process you may engage in through your deliberations as to what was said. If you feel you cannot determine from the tape what particular words were spoken, you should disregard the transcript insofar as that part of it is concerned. If you believe that after listening to the tape, that you cannot make a determination.

So once again the transcripts are aids and guides to you. The recording, the tape recording here will constitute the evidence you should focus on.

The record also shows that Judge Sweeney's final instructions included the following admonitions:

Now, Ladies and Gentlemen, in this case during the course of the trial, you've listened to a recording, which has been represented to be excerpts of a meeting between the defendant and Rashaun Wall, which was recorded by a device secretly worn by Mr. Wall. You have been provided a transcript that was prepared by the Howard County Police Detective assigned to this case assisted by other police department or prosecution personnel. And Ladies and

Gentlemen, the transcript, your personal copy that you may or may not have annotated, will be available for you during deliberations.

The transcript has been provided to you as a possible aid to assist you [in] evaluating the recording. Th[e] fact that it's been provided to you is not to suggest that the transcript necessarily is fully accurate or complete as to the excerpts you have heard. It may or may not be. You should consider the transcript to the degree and only to the degree that you believe it would assist you in understanding the recording. In considering the degree to rely on this transcript, you should consider all factors that may [a]ffect its reliability. This may include the fact that the transcript was prepared by a person or persons or assisting the prosecution of the defendant, the care with which the transcript was prepared and particularly how faithfully it in fact reflects the actual recording made.

If you perceive any variation between the recording you have heard and the transcript provided, you should be guided solely by the recording since it reflects the actual recording of the event. If you cannot determine from the recording what particular—what particular words were spoken, you must disregard that portion of the transcript in so far as those words are concerned.

Appellant was, of course, entitled to the above quoted instructions.[1] He was not, however, entitled to exclusion of the transcripts.

In *U.S. v. Font–Ramirez*, 944 F.2d 42 (1st Cir.1991), the United States Court of Appeals for the First Circuit rejected the appellant's argument that the prosecution should have been prohibited from introducing a transcript that—according to the appellant—"purported to transcribe passages that were unintelligible on the tape ... transcribed by [a federal Drug Enforcement Agent], who may have filled in inaudible portions

---

1. *See Imes v. State,* 158 Md.App. 176, 181–82, 855 A.2d 381 (2004).

of the tape with his memories of the conversations." *Id.* at 48. The *Font–Ramirez* Court stated:

> The objectivity of the transcriber of a tape obviously bears on the decision whether or not to admit a transcript into evidence. The tape recording and not the transcript is evidence in the case. The transcript should, therefore, mirror the tape and should not be an amalgam of the recording and the hearsay testimony of persons present at the conversation. Where inaccuracies in the transcript combine with possible bias in the transcription process, a transcript may be excluded from evidence. *See United States v. Robinson,* 707 F.2d 872, 877–78 (6th Cir.1983). The touchstone, however, is the accuracy of the transcript. Because Font–Ramirez did not offer an alternative transcript and did not point out any specific inaccuracies in the government's transcript, the district court was within its discretion in allowing its use. *See United States v. Devous,* 764 F.2d 1349, 1355 (10th Cir.1985).

*Id.* We agree with that analysis.

In James G. Carr & Patricia L. Bellia, *The Law of Electronic Surveillance,* the authors have collected the appellate opinions that hold as follows:

> If defense counsel has not taken the opportunity to prepare his or her own transcripts, claims about the deficiencies of the transcripts prepared by the government are less likely to receive a sympathetic response.
>
> *           *           *
>
> Courts have consistently rejected defendants' complaints that allowing the jury to read a transcript placed unwarranted emphasis on the recorded evidence, programmed the jurors to respond favorable to the government's position, or acted as cumulative evidence.... Use of a projector ... to display the transcript is permissible. Where a transcript has been shown to have been accurate and the jury has been given a cautionary instruction that the attorneys' arguments were not evidence, no error has been found when a prosecutor read from a transcript during closing argument.

§ 7:76, at 7–164 & 164.1; 7–165 & 166. (Footnotes omitted). Under the circumstances of the case at bar, Judge Sweeney neither erred nor abused his discretion in overruling appellant's objections to the transcript.

## II.

In the words of appellant's brief:

As previously noted, it was the defense theory of the case that someone other than the appellant committed the murder. In support of that theory, defense elicited testimony that in the days immediately following the murder, the police developed a list of "possible" suspects, which included Antwanne Kilgore, Eugene Jordan, and Christopher [Roberts], all of whom had a relationship with [the victim]. It was the defense's contention at trial that all three men had motive to kill [the victim] and that two of them, Eugene Jordan and Christopher Roberts, may have had the opportunity as well.

In an effort to support that contention, defense counsel sought to introduce letters from Eugene Jordan to establish that the two had a sexual relationship prior to him being incarcerated, a relationship that Mr. Jordan had every intention of continuing when he got out. Although there was testimony that Mr. Jordan was in a halfway house in DC, that he was apparently not happy that [the victim] was pregnant with another man's child and that the security at that facility was hardly airtight, the defense was not permitted to introduce the letters [written by Mr. Jordan to the victim, which were discovered by investigators processing the victim's residence] establishing the extent of their relationship. . . .

With regard to Christopher Roberts, it was established at trial that Mr. Roberts was the father of [the victim's] daughter and that at the time of the murder the two were engaged in a custody battle. In an effort to establish the intensity of that custody battle and the animosity between the two, defense counsel sought to admit a notebook found during the execution of search warrant of Roberts' car as

well as the documents contained in the court file in Anne Arundel County Circuit Court. . . . The trial court refused to allow defense counsel to do so.

■ We recognize that the erroneous exclusion of admissible evidence results in a verdict "based upon an incomplete factual predicate." *Deinhardt v. State,* 29 Md.App. 391, 398, 348 A.2d 286 (1975). We are not persuaded, however, that Judge Sweeney either erred or abused his discretion in excluding (1) Mr. Jordan's letters to the victim, or (2) the documentary evidence pertaining to the victim's custody "battle" with Mr. Roberts.

■ As stated above, appellant's trial counsel was able to present evidence "that other suspects were developed early on in the investigation and that two of the individuals both had possible motive and the opportunity to commit the crime." Detective Duane Pierce testified, however, that the investigation of those other suspects revealed that at the time the victim was murdered, (1) Mr. Roberts was in Ohio, and (2) Mr. Jordan was confined in a "halfway house" in the District of Columbia. Under these circumstances, documentary evidence in support of "appellant's theory [that the victim was killed by Mr. Roberts or by Mr. Jordan is] totally speculative and tenuous." *Worthington v. State,* 38 Md.App. 487, 498, 381 A.2d 712 (1978). Moreover, even assuming that these items were relevant, Judge Sweeney was entitled to exclude them as needlessly cumulative, pursuant to Md. Rule 5–403.

## III.

■ Although the prosecutor's rebuttal argument should not have violated the prohibition against the "golden rule" argument,[2] the proper response to such an argument is properly committed to the sound discretion of the trial judge. In *Metheny v. State,* 359 Md. 576, 755 A.2d 1088 (2000), the Court of Appeals stated: "There is an abuse of discretion *'where no*

---

**2.** It was of no consequence where appellant resided, or that the victim was a resident of the county where all the jurors resided.

*reasonable person would take the view adopted by the [trial] court'.... In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110, 118 (1997) (citations omitted)(emphasis added)." *Id.* at 604, 701 A.2d 110. In *Gray v. State,* 388 Md. 366, 879 A.2d 1064 (2005), the Court of Appeals stated:

> We will only reverse a trial court's discretionary act if we find that the court has abused its discretion. As noted by this Court in *Dehn v. Edgecombe,* 384 Md. 606, 865 A.2d 603 (2005):
>
>> " 'Abuse of discretion' is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have defined in many different ways.... [A] ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable. That kind of distance can arise in a number of ways, among which are that the ruling either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective. That, we think, is included within the notion of 'untenable grounds,' 'violative of fact and logic,' and 'against the logic and effect of facts and inferences before the court.' " *Dehn v. Edgecombe,* 384 Md. at 628, 865 A.2d at 616 quoting *North v. North,* 102 Md.App. 1, 13–14, 648 A.2d 1025, 1031–1032 (1994).

*Id.* at 383–84, 879 A.2d 1064.

From our review of the record, we are not persuaded that Judge Sweeney abused his discretion in overruling the objections and/or in denying the motion for mistrial and/or in refusing to deliver a curative instruction. Even if we were persuaded to the contrary, however, we would hold that appellant is not entitled to a new trial because we are "persuaded beyond a reasonable doubt that [the argument about which appellant complains] did not contribute to the guilty

verdict[s] returned against [appellant]." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976).

**JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.**